### O. L. WHORTON v. STATE.

No. 2037.    Decided January 8, 1913.

**1.—Forgery—Reproduction of Testimony—Permanent Removal.**

Where, upon trial of forgery, a sufficient predicate was laid for the reproduction of the testimony of an absent witness who had permanently removed from the State, there was no error. Following Connery v. State, 23 Texas Crim. App., 378, and other cases. Davidson, Presiding Judge, dissenting.

**2.—Same—Rule Stated—Absent Witness.**

When it is once shown that a witness had permanently removed beyond the jurisdiction of the court, it is not necessary to show his exact whereabouts on the day of the trial. Following Smith v. State, 66 Texas Crim. Rep., 593. Qualifying Ripley v. State, 58 Texas Crim. Rep., 489.

**3.—Same—Evidence—Exculpatory Statements—Confessions.**

The statutes governing the admissibility of confessions made under arrest do not apply to nor include statements which are wholly exculpatory, even though the State should introduce other evidence showing that such exculpatory statements are false. Following Ferguson v. State, 31 Texas Crim. Rep., 93. Distinguishing Morales v. State, 36 Texas Crim. Rep., 234.

**4.—Same—Case Stated—Confessions—Arrest.**

Where the exculpatory statement was that defendant had not been in the place at the time the alleged offense was committed, the same was not a confession required to be in writing when defendant was under arrest; besides, the facts showed that he did not know he was under arrest, and that he afterwards made a written statement which complied with the statutes as to confessions under arrest which was the same in substance as his exculpatory oral statement, and there was no error. Following Martin v. State, 57 Texas Crim. Rep., 264, and other cases. Davidson, Presiding Judge, dissenting.

**5.—Same—Evidence—Signature.**

Where, upon trial of forgery, while a State's witness was testifying that he did not write his name on the back of the alleged forged check, the court permitted him to write his name on a slip of paper in the presence of the jury, but the jury did not see the signature and the paper upon which it was written was excluded from the consideration of the jury, there was no error.

**6.—Same—Circumstantial Evidence—Check.**

Upon trial of forgery, there was no error in introducing in evidence, as a circumstance, that the party whose name was alleged to be forged had given defendant another check upon the same bank, to trace knowledge to the defendant that the said party did his banking business with said bank. Following Noftsinger v. State, 7 Texas Crim. App., 301, and other cases.

Vol. LXIX Crim.—1.

7.—Same—Charge of Court—Defendant's Declarations—Exculpatory Statements—Alibi.

Where, upon trial of forgery, the court admitted in evidence the exculpatory statement of defendant that he was not in the place where the alleged forged check was passed at the time it was passed or forged, as claimed by the state, and such statement did not contain any inculpatory fact, and the court charged on alibi, there was no error in refusing a special charge that the State was bound by said statement of defendant unless disproved by the evidence. Following Trevenio v. State, 48 Texas Crim. Rep., 207, and other cases. Davidson, Presiding Judge, dissenting.

8.—Same—Indictment—Words and Phrases.

Where, upon trial of forgery, the indictment followed approved precedent, the fact that "A. D." was left out just before the year "1911," was immaterial and the indictment was sufficient.

9.—Same—Indictment—Endorsement.

Where the endorsement on the alleged forged check was made at the bank where it was cashed, at the banker's request, it was not necessary to allege such endorsement in the indictment. Following Crayton v. State, 47 Texas Crim. Rep., 88, and other cases.

10.—Same—Evidence—Comparison of Handwriting.

Upon trial of forgery, there was no error in admitting in evidence certain letters found upon defendant which were in the handwriting of the defendant, as standards of comparison with the writing in the forged check Hughes v. State, 59 Texas Crim. Rep., 294, and other cases.

11.—Same—Evidence—Declarations of Defendant—Charge of Court—Invited Error.

Where the declarations of defendant applied to the charge of forgery against the defendant and were thus limited by the charge of the court, the contention of defendant that he was not informed that he was also charged with passing a forged instrument are not well taken, and there was no error; besides, the court's charge was invited by a requested charge by defendant. Following Carbough v. State, 49 Texas Crim. Rep., 452.

12.—Same—Practice on Appeal—Charge of Court.

Where defendant was indicted for forgery and passing a forged instrument, but tried and convicted of forgery, objections relating to the charges of the court as applied to passing a forged instrument need not be considered.

13.—Same—Charge of Court—Sufficiency of the Evidence.

Where, upon trial of forgery, the evidence was sufficient to support the conviction, and the requested charges were either given or covered by the court's main charge, there was no error.

Appeal from the District Court of Parker. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle*, for appellant.—On question of insufficiency of indictment: Robinson v. State, 43 S. W. Rep., 526; Overly v. State, 31 S. W. Rep., 377; Com. v. McLoon, 66 Am. Dec., 354.

On question of permitting other checks in evidence: Chester v. State, 23 Texas Crim. App., 577.

On question of permitting witness to write his name: Whittle v. State, 43 Texas Crim. Rep., 468; McGlasson v. State, 37 id, 620; Haynie v. State, 2 Texas Crim. App., 168; Thomas v. State, 18 id, 213.

On question of admitting declarations of defendant: Nolen v. State, 9 Texas Crim. App., 419; Williams v. State, 10 id, 526; Bennett v. State, 25 id, 695.

On question of reproduction of testimony: Evans v. State, 12 Texas Crim. Rep., 370; Martinas v. State, 26 id, 91; Pinkney v. State, 12 id, 352; Menges v. State, 21 id, 413; Cooper v. State, 7 id, 194; Cowell v. State, 16 id, 57.

On question of refusing special charge on exculpatory testimony: Pharr v. State, 7 Texas Crim. App., 472; Jones v. State, 29 id, 20; Pratt v. State, 50 id, 227; Combs v. State, 55 Tex. Crim. Rep., 334; 108 S. W. Rep., 649; Baggett v. State, 65 Tex. Crim. Rep., 425; 144 S. W. Rep., 1136.

On question of court's failure to charge on confessions applicable to passing a forged instrument: Ewing v. State, 29 Texas Crim. App., 434; Martin v. State, 38 Texas Crim. Rep., 285.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—In this case appellant was prosecuted and convicted of forgery, and Presiding Judge Davidson has written an opinion reversing and remanding the case on several grounds, in none of which do we concur, but think the case should be affirmed.

We will first discuss those grounds upon which our Presiding Judge in his opinion thinks the case should be reversed. The first is, that no sufficient predicate was laid to admit the reproduction of the testimony of the witness Bryant, who had testified upon a former trial of this case. We think a sufficient predicate was laid and there was no error in admitting the testimony. The witness J. H. Erwin testified that he knew Bryant; that Bryant was a married man, and he was with him the day he and his family left for Georgia and shipped his household goods, and he knew he was moving from this State to Georgia. That he heard from him after he arrived at Talmon, Georgia; that Bryant had written him from that place and sent him a money order as he had promised to do. The testimony of this witness shows that Bryant moved permanently from Texas to Georgia, and instead of the authorities holding that such proof is not a sufficient predicate, we think they hold to the contrary. A careful reading of the opinions cited by our Presiding Judge will show that a permanent removal from the State, when shown, will admit the testimony, while a temporary absence will not, and in these views we cordially concur. But in this case a permanent removal was shown, and the court did not err in admitting the testimony. The authorities so hold: Conner v. State, 23 Texas Crim. App., 378; Evans v. State, 12 Texas Crim. App., 370; Pinkney v. State, 12 Texas Crim. App., 352; Garcia v. State, 12 Texas Crim. App., 335;

Johnson v. State, 1 Texas Crim. App., 333; Post v. State, 10 Texas Crim. App., 579; Johnson v. State, 26 Texas Crim. App., 640; Parker v. State, 24 Texas Crim. App., 61; Peddy v. State, 31 Texas Crim. Rep., 547; Gilbreath v. State, 26 Texas Crim. App., 315. Many other cases could be cited, but they all adhere to the holding that when a witness is shown to have permanently removed beyond the jurisdiction, the evidence is admissible; otherwise when his absence is only temporary, and in this case the evidence shows that the removal was permanent, and when it is once shown that a witness has permanently removed beyond the jurisdiction of the court, it is not necessary to show his exact whereabouts on the day of the trial. To place such a burden on the State or defendant woud in effect exclude the testimony in almost every instance. We had the question before us in the case of Smith v. State, 66 Tex. Crim. Rep., 593; 148 S. W. Rep., 722, and there discussed it at length, and we adhere to the rule there laid down. This holding is not in conflict with any of the decisions cited in the opinion of our Presiding Judge, when read and digested in the light of the facts in those cases, unless it be the case of Ripley v. State, 58 Texas Crim. Rep., 489, and if this case is subject to the construction given it by our presiding judge in this case it is hereby overruled, and the rule declared to be as stated by Judge Hurt in Post v. State, 10 Texas Crim. App., 579; by Judge Simkins in Peddy v. State, 31 Texas Crim. Rep., 547; by Judge White in Conner ·v. State, 23 Texas Crim. App., 78, and by all the other judges who have occupied a position on this court and our Supreme Court, (except in the Ripley case, supra,) and that is, where the testimony shows by circumstances or positive evidence that the witness has moved permanently beyond the jurisdiction of the court, the testimony may be reproduced.

Neither can we agree with the opinion of the Presiding Judge that the testimony of the witness Barney Barker, as to what appellant told him, is inadmissible. The statement was an exculpatory statement, and not a confession. Barker testified: "When I called the defendant off there I asked him when was the last time he was in Weatherford, and he said he had not been in Weatherford since—I am not positive now whether the last day in March or the first Monday in March, but one or the other was the last time he had been here. Then I asked him if he had been here yesterday and he said no, he was not here since— either the last day of March or the first Monday in March. That was the day after the check was passed on the bank." The contention of the State was that defendant was in Weatherford and not in Fort Worth on this date, and in order for the State to obtain a conviction it would be necessary to prove that he was in Weatherford. So this statement would be wholly exculpatory, and in no sense a confession of guilt; therefore, it would not come within the rules of the statute relating to confessions. Mr. Bouvier in his Law Dictionary defines a confession: "The voluntary declaration made by a person who has committed a crime to another of the agency or particupation which he

had in the same. An admission or acknowledgement by a prisoner that he committed the crime with which he is charged.'' In Cyc., vol. 8, page 562, a confession is thus defined: ''The acknowledgement of some fact, of a fault or wrong, or of an act or obligation adverse to one's reputation or interest; an admission of something done antecedently. At common law an admission of a cause of action. In criminal law, a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act, or the share and participation which he had in it; the voluntary declaration made by a person who has committed a crime or misdemeanor, to another, of the agency or participation he had in the same; a person's declaration of his agency or participation in a crime; an acknowledgement of guilt; the acknowledgement of a crime or fraud.'' In this work are cited many authorities, among which is People v. Miller, 122 Cal., 84, wherein the Supreme Court of that State said: ''In our law the term admission is usually applied to civil transactions, and to those matters of fact in criminal cases which do not involve criminal intent; the term confession being generally restricted to acknowledgement of guilt,'' citing Greenleaf Ev., Sec. 170.

In the Am. & Eng. Ency. of Law, vol. 6, p. 521, the definition is thus given: ''A confession is a voluntary admission or declaration by a person of his agency or participation in a crime.

''The term 'confessions' is not the mere equivalent of the words 'statements' or 'declarations.' A statement or declaration to amount to a confession must be inculpatory and not exculpatory in its nature. Thus statements made by persons indicted together for the same offense, by which each charges the other without inculpating himself, and makes no reference to anything done in common as charged, are not confessions.

''Confessions as distinguished from admissions are acknowledgements of facts criminating in their nature, and not mere declarations against interest.

''Moreover, a confession is limited in its precise scope and meaning to the criminal act itself. It does not apply to acknowledgements of facts merely tending to establish guilt, since a damaging fact may be admitted without any intention to confess guilt. These are criminating admissions rather than confessions.'' Under this text are cited authorities from almost every state in the Union.

In Words & Phrases the word ''confession'' is said to mean: ''A 'confession' is a person's declaration of his agency of participation in a crime. The term is restricted to acknowledgements of guilt. A confession is limited in its precise scope and meaning to the criminal act itself. It does not apply to acknowledgements of facts merely tending to establish guilt, since a damaging fact may be admitted without any intention to confess guilt. These are criminating admis-

sions, rather than confessions. Where a person only admits certain facts from which the jury may or may not infer guilt, there is no confession." On pages 1418 and 1419, vol. 2, will be found a long list of authorities supporting this text.

We have cited these authorities, for in our own decisions there is some conflict. Some cases hold that exculpatory statements are included in the statute governing the admissibility of confessions, while in a number of other cases the law is held as announced in the above authorities. Our present Presiding Judge in a well-considered case announced the law in accordance with these decisions. In the case of Ferguson v. State, 31 Texas Crim. Rep., 93, he said:

"The statute, article 750 of the Criminal Procedure, relates to confessions only, and does not extend to nor include within its meaning and provisions statements exculpatory of the defendant. A confession is inculpatory evidence, which connects or tends to connect the defendant, either directly or indirectly, as a guilty participant in the offense charged. Quintana v. The State, 29 Texas Crim. App., 401; Willard v. The State, 26 Texas Crim. App., 126; Eckert v. The State, 9 Texas Crim. App., 105; Andrews v. The State, 25 Texas Crim. App., 339.

"The statement made by defendant did not admit his guilt, and was not so intended by him when he made it. It neither connected nor tended to connect defendant with the theft, but on the contrary, it was intended to exclude and rebut such inference. Instead of being an admission or confession of his guilt, it was intended as a denial of that fact. Same authorities.

"Such statements are made as well for the purpose of showing the absence of guilt as to manifest an innocent connection with the possession of the alleged stolen property by a defendant, and are intended to operate as exculpatory of guilt and crime. This character of evidence is elicited for the purpose of explaining the defendant's possession of the property, when his right thereto is called in question. While contradictory statements made by a defendant, as to his possession of property recently stolen, may be given in evidence, yet such statements have not been held to be 'confessions' of guilt under the statute. If such accounts are to be treated as confessions of guilt, it would not devolve upon the State to disprove them, as a prerequisite to a conviction, nor would the court be authorized or required to charge the jury that such account must be disproved in order to warrant a conviction. Eckert v. The State, 9 Texas Crim. App., 105." Many cases besides those cited in this opinion might be referred to but we deem it unnecessary, as the rule is so clearly so stated in the Ferguson case. However, in the case of Morales v. State, 36 Texas Crim. Rep., 234, the Quintana case in 29 Texas Crim. App., 401, and other cases holding that the *confessions of a defendant* made while under arrest, although not taken in conformity with the statute, were admissible, were overruled, but the

court expressly limited its action to those instances where the statements offered were confessions of guilt, the court in the Morales case stating: ''The matter inquired about in this case was a confession, and it is not necessary here to discuss the question involved in the cases above referred to as to whether the statements there made by the defendants were in the nature of a confession or not.'' In the Morales case the court only holding that a statement in itself of a confession of guilt was inadmissible if not taken in conformity with the statute, even though the defendant became a witness, pretermitting altogether a discussion of whether or not exculpatory statements were included in the statute governing admissibility of confessions. And yet in some instances this case has been sought to be used as excluding exculpatory confessions, when a careful reading of it will demonstrate it does not so hold. This question is again discussed in Parks v. State, 46 Texas Crim. Rep., 100, and it again held if the statements are inculpatory they are not admissible, and in some of the cases it may be said that the language used is broad enough to include exculpatory as well as inculpatory statements under the statute governing confessions, and because of these two conflicting line of decisions in our own court, we have made as thorough investigation of this question as the books at our command would permit, and we have come to the conclusion that the great weight of authority upholds the opinion of Presiding Judge Davidson in the Ferguson case, supra, and the statutes governing the admissibility of confessions do not apply to nor include statements which are wholly exculpatory, even though the State should introduce other evidence showing such exculpatory statements are false. That such is the correct rule we have no doubt, for the reasons for the adoption of a statute excluding confessions of guilt, except under given circumstances, cannot and in no sense do or would apply where a defendant makes a statement which, if true, would conduce to show his innocence. Mr. Chamberlayne, in his work on Modern Law of Evidence, vol. 2, beginning on page 1863, treats of this question at length, among other things saying:

''There is no branch of the law of evidence in such inextricable confusion as that relative to confessions. The general rule that a confession, a statement by one accused of crime directly or by necessary inference admitting his guilt, is receivable in evidence, provided it complies with certain requirements of procedure, is not questioned in any quarter. The difficulty with regard to the matter is, in large measure, due to the fact that an attempt is being made, in this connection, on certain alleged grounds of public policy, rigidly to maintain rules of procedure, as matters of substantive law, which are hard to sustain in point of reason. Just here has been, as it were, a fierce struggle in the law of evidence between the formalism of the past and the rationalism of the future. * * *

''It follows from the very definition of a confession that it must,

as a total, incriminate the declarant, as to the crime charged in the indictment. It is not sufficient that the alleged confession should be a statement by one accused of crime admitting that he committed the overt act, if at the same time he sets up a justification, as self-defense, or other exculpation, so that, when the entire effect of the statement is regarded, it is exculpatory. Such a declaration as has been described while admitting a fact is, in effect, a denial of the liability legally arising from the existence of the fact admitted. It is not therefore a confession, and is accordingly admissible under conditions which would exclude an actual confession, i. e., an inculpatory statement.'' Under this text in Mr. Chamberlayne's work will be found collated an exhaustive list of authorities.

As the statement testified to by the officer was wholly exculpatory, the court did not err in admitting it. We have written at length on this proposition, as some of our decisions have used language that one could hardly tell whether exculpatory statements were included in the term ''confession'' as well as inculpatory statements, and as in our opinion only inculpatory statements are included, it necessarily follows that it is only when the statement is inculpatory in its nature it is inadmissible, unless it has been reduced to writing in accordance with the requirements of our Code. If the statement is wholly exculpatory, the State may introduce it as a circumstance in the case to be considered with the other evidence.

Again, in this case, we do not think the evidence would show that defendant had been apprised he was under arrest. The officer testified: ''Wilson Crawford pointed the defendant out to me, and I walked down there where the defendant was; his father was standing there talking to some one else. I shook hands with the defendant and told him to come off, I wanted to talk to him a little bit, so we walked back towards the bank.'' The defendant asked permission to cross-examine the witness, and he testified: ''I am an officer and was at that time. I had not told him that he was arrested. I just called him off there to talk with him. I had him in my custody or charge when I called him off to one side. If he had tried to escape I would not have permitted it. I had him in custody for the alleged charge for which he is on trial now.'' On re-direct examination he testified: ''I had not then told him he was under arrest, nor had I said anything to him at that time about being under arrest. I called him off there to talk to him, to find out when he was here in Weatherford; had made no statement to him about what I wanted to see him for.'' There is nothing in the record to indicate that appellant knew that Mr. Barker was an officer, and the record discloses that nothing was said that would lead him to believe or in any way apprize him that he was under arrest, and the testimony for this reason would be admissible. Martin v. State, 57 Texas Crim. Rep., 264; Grant v. State, 56 Texas Crim. Rep., 411; Craig v. State, 30 Texas Crim. App., 619; Frye v. State, 66 Tex. Crim. Rep., 166; 146 S. W. Rep., 199. In

addition to this, if by any construction of the language used by appellant, it could be held to be a confession of guilt, which we think is impossible, and if it could be held that he had been made aware that he was under arrest, yet in a few moments after the conversation with Mr. Barker, appellant, after he had been notified by the county attorney that he was under arrest, charged with forging this check and that any statement he might make could be used against him. makes the same statement to the county attorney in a more amplified form; it was reduced to writing and signed by appellant, and complies in every particular with the statute governing the admissibility of confessions. So in no event could the testimony of Mr. Barker present reversible error.

Again, we cannot agree with our Presiding Judge when he holds that the trial court committed error in permitting Bill Leatherwood to write his name on a slip of paper in the presence of the jury. The bill of exceptions shows by its recitals, it being bill No. 3, that when Bill Leatherwood was testifying, and had testified that he did not write his name on the back of the forged check, which our Presiding Judge correctly holds was permissible for him to do, the county attorney then asked him to write his name, and he did so; that it was then offered in evidence, but defendant objected, and the court did not permit such signature to be introduced in evidence, the bill reciting: "The jury did not see, examine nor use Bill Leatherwood's signature for any purpose." Under such circumstances we do not see how the jury could have used it as a "standard of comparison." The bill itself says the jury did not *see* the signature. The fact that it was written while the witness was testifying, but excluded by the court from their consideration when the defendant objected, would not authorize us to presume, in the face of the recitals of the bill itself, that they saw something the record says they did not *see, examine nor use for any purpose.*

Neither can we agree with our Presiding Judge in holding that the check given by Mr. Cockburn to appellant was inadmissible for the purpose for which it was admitted. While defendant objected on all the grounds stated in our Presiding Judge's opinion, yet if the check was admissible for any purpose, these objections would not exclude it. Our Presiding Judge correctly holds that Mr. Cockburn was properly permitted to testify that he had not written the forged check nor authorized any one else to do so, and he did so testify. No one disputed that fact; in fact, there is no contention in the record that Mr. Cockburn had in fact signed the check, the only contention of appellant being that he was not the person who forged the check. Therefore, the check could and would serve no purpose as a standard of comparison with a check that was in fact written by Mr. Cockburn. However, the check was admissible for another purpose. This was a case of circumstantial evidence. No one saw appellant forge the check, if he did do so. According to the State's evidence, appellant

went to Weatherford on the 26th day of April, (and that he was in Weatherford on that day is conclusively shown to our minds by a number of witnesses) and went into the Club Restaurant for his dinner; that while in this restaurant he asked for a blank check on the First National Bank, and one was torn out of the back of the book and given him. This check book had been printed to be used by "Patrick & Sliger" and their names appeared thereon. No other place in the town had blank checks with "Patrick & Sliger's" names thereon, and the person in charge of the restaurant says "He had not given anybody else a check that day or any other day out of this First National Bank book,"—the Patrick & Sliger book. The forged check was presented to and cashed by the First National Bank, a short time after Mr. Crawford says defendant obtained this blank check from him. The bank officer who cashed the check says he was busy, and cannot positively identify the defendant as the person who presented the check for payment, and to whom it was paid, but he thinks he is the person. There are other circumstances in evidence, but these facts and circumstances are sufficient to show that it was permissible as a circumstance in the case to prove that Mr. Cockburn had theretofore given appellant a check, and he had cashed it at this bank, to trace to appellant knowledge that Mr. Cockburn did his banking business with the First National Bank, and that bank would cash checks signed in his name, and also that the person who signed Mr. Cockburn's name to the forged check had probably seen Mr. Cockburn's signature. All these were circumstances admissible in a case depending wholly on circumstantial evidence. In Noftsinger's case, 7 Texas Crim. App., 301, this court says: "In a case like the present one, depending wholly upon circumstantial evidence, the mind seeks to explore every possible source from which any light, however feeble, may be derived." (Cooper v. State, 19 Texas, 449; Barnes v. State, 41 Texas, 42; Hamby v. State, 36 Texas, 523; Black v. State, 1 Texas Crim. App., 368.) And in such cases the nature of the case in many instances demands a greater latitude in the presentation of the evidences of the circumstances than where a conviction is sought upon direct and positive testimony. (Ballew v. State, 36 Texas, 98; Preston v. State, 8 Texas Crim. App., 30; Bouldin v. State, 8 Texas Crim. App., 332; Grimmett v. State, 22 Texas Crim. App., 36; Simmons v. State, 10 Texas Crim. App., 131; McGuire v. State, 10 Texas Crim. App., 125. This has not only always been adhered to as the rule of decision in this court, but such is said to be the correct rule by Mr. Wharton in his work on Criminal Evidence, Sec. 877, where a long list of authorities will be found in the note.

We agree that our Presiding Judge may be correct in holding that the check and attendant circumstances would not probably have been admissible as a "standard of comparison" and the authorities cited by him would support that holding, but in this case it was not necessary for that purpose, could not have been useful for that purpose,

and was not introduced for that purpose, as there was no contention that Mr. Cockburn signed the forged check. If there had been such a contention in the case, then its introduction might have been harmful, but as there was no such contention, it could not have been hurtful in that respect, and it was admissible as a circumstance in the case tending to shed light on whether or not appellant forged and passed the check on The First National Bank.

The only other question discussed by our Presiding Judge is the failure of the court to give the special instructions requested by appellant, as the State had introduced the statement of defendant wherein he claimed that he was not in Weatherford on the day the blank check was obtained from the Club Restaurant, filled out and presented to the bank for payment, but was in Fort Worth. The court charged the jury on alibi, instructing them: "Among other defenses set up by the defendant is what is known in legal phraseology as an alibi; that is, that if the offense was committed as alleged, then the defendant was, at the time of the commission thereof, at another and different place from that which such offense was committed, and therefore was not and could not have been the person who committed the same. Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the offense was committed at the time of the commission thereof, you will find the defendant not guilty." This presented the issue specifically as made by appellant's statement, and they find against him, necessarily finding, in doing so, that the statement he made that he was in Fort Worth and not in Weatherford, was not true, and no other submission was necessary, and we are of the opinion the court did not err in refusing the special instructions asked in regard to this issue. The statement made by the defendant to the county attorney reads as follows:

"Weatherford, Texas, April 27, 1911.

My name is O. L. Whorton. The following is my voluntary statement made to Bernard Martin, County Attorney of Parker County, Texas, as to my connection with the offense of forgery of a check on G. W. Cockburn for $43.00 on the 26th day of April, 1911, in Parker Co., Texas, and I am making this voluntary statement to the said Bernard Martin after being told and warned by him that I did not have to make any statement at all, and after being told and warned by him that any statement that I might make in connection with said offense might be used as evidence against me upon the trial for the charge herein inquired about, and that the same could not be used as evidence for me on any such trial. About 10 o'clock yesterday I was with Dave Green; we were about 3 miles from Cresson. I think we were in Parker County. I am not sure we were in Parker County; it might have been Hood County. I had been working for Dave Green a week. I went to work for him yesterday was a week ago. I went to Fort Worth yesterday, the 26th of April. I got to

Fort Worth about 1:30 o'clock. I went to Fort Worth yesterday from Dave Green's house in my own buggy. No one was with me. My buggy is at Fort Worth now. I paid by R. R. *fair* on the train this morning to Weatherford. I did not have time to get a ticket. The last time I was in Weatherford before today was the last day of March, 1911. I have seen Crawford, who worked at the Club Restaurant, lots of times. I have been in the said restaurant several times when Crawford was in there. I have seen him waiting on people in the restaurant a good many times. I have seen him in the restaurant enough to know him when I go in there. I have got my meals several times at the Club Restaurant this year. I know G. W. Cockburn, who lives about 3 miles south from Agnes. I have known him about 5 or 6 years. I worked for him some in March, 1911. Mr. Cockburn has paid me in checks and also in cash. I remember he paid me some time in Feb. or Jan. of this year with his check, and I cashed it myself over at the First National Bank here in Weather-ford; it was drawn on said bank. I do not remember the amount. It seems like he paid me with a check once besides this time. I know Bill Leatherwood. I have known him about 10 years. I have been to his house. Dave Green did not pay me anything for my work this last week; he still owes me for all my work. I don't know when he is going to pay me. I don't know how much he is owing me for my work; there was nothing said about my pay. I wrote the names of G. W. Cockburn and Bill Leatherwood on the envelope which I had in my pocket, which was turned over to John Brown and Barney Barker. I think I wrote their names while standing there in the First National Bank this evening. I also done the marking and scribbling on the said envelope while at the bank or after I left the bank. No one asked me to write their names on the envelope. I believe I shook hands with Walter Bryant this morning in Fort Worth. I stayed with Carl Willoughby last night in Fort Worth—he is a street car conductor—1503 East 20th Street is his residence. I ate supper and breakfast at his house. I ate dinner yesterday on 13th Street in Fort Worth; I don't remember how much I paid for it.

"Tom Harris, constable at Cresson, paid me $3.00 Tuesday of last week. He is the last man that has paid me any money. B. F. Bone, at Cresson, paid me $2.00 or $3.00 week before last—he is a ranchman.

"I had all my money in silver yesterday when I left Dave Green's. I guess I had $8.00 or $10.00.                    O. L. Whorton.

"Witness my hand this the 27th day of April, 1911."

The State's contention was that appellant was in Weatherford until 3:30 the evening of the 26th, when he took an eastbound train and went to Fort Worth; that while in Weatherford, before taking the train for Fort Worth, he had put his horse and buggy in a feed-yard in Weatherford; gone to the Club Restaurant, eat his dinner, and obtained the blank check; that he then filled out the check in Mr. Cock-

burn's name and cashed it at the bank, thereafter taking the train for Fort Worth. The State proved that when he left Dave Green's he said he was going to Weatherford, and left traveling in that direction; the State proved that his horse and buggy were placed in Bankhead's wagon yard in Weatherford by appellant on that day, and that his horse and buggy were not in Fort Worth; the State proved he eat his dinner on that day in the Club Restaurant in Weatherford, and obtained a blank check; he was seen in Weatherford on that day by a number of people who knew him; he was seen at the depot in Weatherford when the east-bound train arrived going to Fort Worth, and when arrested there was found on his person a receipt for railroad fare for an amount corresponding with the fare from Weatherford to Fort Worth. Many other facts and circumstances were introduced in evidence by the State, which showed the statement of appellant as to his actions and whereabouts on the 26th of April were wholly false. As in the statement of appellant there are no incriminating circumstances upon which the State could rely for a conviction, the court correctly submitted the only issue made by his exculpatory statement, and that was whether or not he was in Weatherford on the day of the transaction. This question has been frequently before this court, and it has always been held that it is only where there are both exculpatory and inculpatory statements in a confession, and the State relies alone on the *inculpatory statements* for a conviction, that this charge need be given as regards the exculpatory statements contained therein. In the case of Slade v. State, 29 Texas Crim. App., 381, in discussing this question, this court held, speaking through Judge Hurt: "In the Pharr case the trial court had submitted to the jury two charges relating to the confessions or statements of the accused, the last being calculated to neutralize the first; the first being correct and the last wrong. The charge rejected in this case is in the language of the correct one in Pharr's case. Now, it is not decided in the Pharr case that, though correct, such a charge must always be given, when requested, in every case in which the State introduces in evidence the admissions of the accused. This question was not before the court in the Pharr case. Under what circumstances must such a charge be given? This question is answered in Jones v. The State, ante, p. 20. When the State relies for conviction alone upon the admissions and confessions of the accused, and such confessions or admissions contain exculpating or mitigating matters, such a charge should be given. In this case the State did not rely upon confessions or admissions alone for conviction. These were introduced mainly for the purpose of impeaching the accused, who testified in the case." As hereinbefore stated, and as shown by the statement of appellant herein copied, there were no inculpatory statements upon which the State could rely for a conviction. It was introduced merely to show that appellant had not spoken the truth when first challenged about the matter, as a circumstance in the case to be

considered by the jury for its worth, and Judge Hurt says under such circumstances no such charge is called for. In the case of Trevenio v. State, 48 Texas Crim. Rep., 207, this court held, speaking through Presiding Judge Davidson, in a case almost similar to this: "The statements were in the nature of an alibi, and exculpatory entirely, showing that he had not been in Texas, which was evidently made for the purpose of defeating the case on the question of limitation, or rather to induce the grand jury not to return the bill, on the theory that he had never been in Texas, for the indictment was not presented until more than five years after the alleged theft. In Slade v. State, 29 Texas Crim. App., 381, the same rule is endorsed, as announced in Jones' case, supra: but the court went farther, after stating the rule, and said: 'In this case the State did not rely upon confessions or admissions alone for conviction. They were introduced mainly for the purpose of impeaching the accused, who testified in the case. There was a large mass of evidence adduced by the State in rebuttal of these confessions and admissions.' In such state of case, the charge is not required. The Slade case is more in consonance with this case. There is not a criminative fact stated by appellant in his testimony before the grand jury. On the contrary, every word is entirely exculpatory and a complete denial of his connection with the transaction in any manner whatever; and that he was neither in Texas nor Guadalupe County in 1898, at the time of the theft, and had never been in Texas after he was a boy, until 1901. The court charged very fully in regard to the question of alibi."

In this case the court charged on alibi, and if that was a sufficient presentation of the issue in the Trevenio case, it certainly would be in this case. Many other cases could be cited, but we do not deem it necessary.

These are all the questions discussed by our Presiding Judge in his opinion as handed us, and at first we intended only to enter our dissent as to the two first propositions herein discussed, this opinion may seem a little irregular, for a thorough study of the case convinced us he was wrong in his conclusion and deductions on all the propositions and, therefore, necessarily wrong in his application of the law. And as we concluded the case should be affirmed, we will briefly notice the other questions.

The court did not err in refusing to quash the indictment. It is drawn in the form frequently approved by this court, and the form laid down by Judge White in his Penal Code in Sec. 882. In the section following 882 will be found a long list of cases collated. The fact that "A. D." was left out just before the year "1911" is immaterial and the criticism hypercritical.

The fact that the indictment did not allege that the check was endorsed "Bill Leatherwood," while the check was so endorsed when introduced in evidence, presents no error. The banker testified that when the check was presented to him it was not endorsed; it was a

completed instrument without the endorsement. The endorsement was made at the bank at the banker's request. Crayton v. State, 47 Texas Crim. Rep., 88; Bader v. State, 44 Texas Crim. Rep., 184, and cases there cited.

The envelope found on appellant and the notations thereon were properly admitted, they being found in his possession. As were also the letters testified to by Miss McAllister. She stated she knew defendant's handwriting; that the letters were written by him to her, and such letters were properly admitted as standards of comparison with the writing in the forged check. Phillips v. State, 6 Texas Crim. App., 364; Williams v. State, 27 Texas Crim. App., 66; Hughes v. State, 59 Tex. Crim. Rep., 294; 129 S. W. Rep., 837.

The defendant objected to the introduction of the statement of appellant in evidence on the ground that while it showed on its face that he was informed that he was charged with forgery, yet appellant was not informed that he was charged with passing a forged instrument. As there were two counts in the indictment, the statement would be admissible as to the count charging him with forgery. The court stated he would admit the statement as to the count charging forgery, and in his charge limited the consideration of the jury of this statement to that count alone at the request of appellant, and as he was convicted of this offense, this presents no error. The complaint of the charge of the court in so limiting this testimony presents no error, for this paragraph of the charge is almost in exact language of a charge requested by appellant, and if it should be held to be upon the weight of the testimony, the error, if error it be, was invited by appellant, and he cannot be heard to complain. Presiding Judge Davidson discusses this question fully in Carbough v. State, 49 Texas Crim. Rep., 452, and collates the authorities so holding, and this has been the rule of this court since the rendition of that opinion.

The defendant being convicted of forgery, and not passing a forged instrument, we do not deem it necessary to discuss those parts of the motion relating solely to the charge as applied to passing a forged instrument. They could have had no effect or bearing on the jury in passing on the forgery count.

Two of the special charges requested by appellant were given, and the others, insofar as they were the law of the case, were fully covered by the court in his main charge.

The evidence amply supports the verdict, and the judgment is affirmed.

Since writing the above opinion, Presiding Judge Davidson has withdrawn his original opinion, and wrote again in this case, but we do not deem it necessary to add anything further.

*Affirmed.*

PRENDERGAST, JUDGE.—I concur.

DAVIDSON, PRESIDING JUDGE (dissenting).—I cannot agree with

my brethren in the disposition of this case on several questions, some of which I deem unnecessary to discuss.

The State introduced what was intended to operate as a confession through the witness Barker, as it did also what purports to be a written confession under the statute, which is sufficiently shown in the majority opinion without reproducing here. These statements, without reviewing all of them, as shown by Barker's testimony and by the purported written confession introduced against appellant on the trial, were introduced against him, and while exculpatory on their face, in the main, yet they were introduced by the State as inculpatory, and as a basis for contradiction of appellant's statements by showing that the statements were false. This, of course, operated as incriminating evidence against him if his statements that he was in Fort Worth were proved to be false. It is a well recognized rule of decision in this State, and is thoroughly embedded in our jurisprudence, that where an explanation is given by the appellant, which would tend to exclude guilt, is used by the State as incriminating evidence by showing its falsity, it has been regarded as a confession or as incriminating. This means of producing a confession is familiar with the profession and the bench of Texas, and comes perhaps more often under the doctrine of reasonable explanation of possession of property which has been recently stolen. Such explanation is introduced by the State and then attacked by testimony showing it to be false, thus making it operate as a confession of guilt. By this means the State shows, or attempts to show, the fact that the defendant was manufacturing a defense and stating falsehoods about the transaction, and this being shown by the testimony, of course, the statement would operate as incriminating evidence in the nature of a confession. This is so thoroughly understood I think it unnecessary to discuss it at any length. That I am correct about this in this particular case is evidenced by the charge of the learned trial court, which was given in the following language: "The State offered in evidence what it claimed to be a confession of the defendant. This was offered as to the offense set out in the first three counts in the indictment, to wit: forgery. The same was not applicable to the fourth count in the indictment, to wit: knowingly and fraudulently passing as true a forged instrument, and it is not evidence as to the charge set out in said count, and you will not consider it as any evidence as to the charge set out in the fourth count, to wit: knowingly and fraudulently passing as true a forged instrument." The learned judge who tried this case below has the record of being a very learned, able and conscientious trial judge, with a record reaching back as long almost as any other trial judge in the State. He understood, as all the lawyers, I think, will understand, that the statements introduced by the State, that of Barker and the written confession of defendant, were treated as a confession and introduced as a confession, and the court so charged the jury, and in doing so he limited it to the three counts

setting up forgery, and excluded the consideration by the jury of the fourth count, which charged him with knowingly and fraudulently passing as true a forged instrument. The jury evidently understood it as a confession, as did the trial judge, as evidenced by the above quoted charge given the jury. Then this being true, and having been so charged to the jury, it was a confession so far as the effect of it upon the jury is concerned. My brethren hold that it was not a confession, yet they fail to reverse because of the charge given by the court, and they hold the court did not err in failing and refusing to charge that if it was exculpatory, as my brethren claim it was in the opinion, that then unless the State proved it false the jury should acquit. The appellant to meet this matter and counteract as well as he could the charge of the court, requested the following instruction:

"You are charged that, the State having introduced in evidence statements of the defendant, which, among other things, contained statements to the effect that defendant was not in Weatherford, Texas, on the day of the alleged offense, then you are charged, that the whole of said statements are to be taken together, and the State is bound by them unless they are shown to be untrue by the evidence; and such statements are to be taken into consideration by the jury as evidence in connection with all facts and circumstances of the case."

Again, the trial court was requested to give this instruction: "You are charged that the State having introduced in evidence the statement of the defendant to the witness Barney Barker, to the effect that he was not in Weatherford, Texas, on the day of the alleged offense herein, is bound by said statement unless same is disproved by evidence; and, in this connection, you are charged that if you entertain a reasonable doubt of the presence of the defendant at the place where the offense, if any, is alleged to have occurred, at the time said acts, if any, were committed, and entertain a reasonable doubt that at any such time he may not have been elsewhere, the defendant is entitled to the benefit of that doubt, and the jury should acquit him."

The court not only refused these instructions, but gave the one above quoted, and informed the jury, in substance, that it was a confession, and limited that confession to the consideration of the facts by the jury to the counts charging forgery. How, under all these circumstances attending this trial, this evidence and these charges, it can be said the defendant had the law of his case fairly presented to the jury, I do not understand. It is met to some extent by my brethren, who seem to be of the impression that because the court charged the jury on alibi, that that was sufficient in these respects. If an alibi was all that was involved in it, there might be some color of strength in their statement, but that does not meet the exculpatory statements as contained by appellant. The authorities, as I understand them, sustain appellant in these matters. To correct these rulings of the trial court, especially in reference to the charge above mentioned, appellant requested and the court refused the requested

instructions above set out. The State introduced this evidence from Barker, and the written confession as criminating testimony, and then introduced all the testimony they could find to show the falsity of his statement as indicative of appellant's guilt. The court's charge was error, as I understand the law, and it was also error to refuse the requested instructions under the long line of well considered cases. Pharr v. State, 7 Texas Crim. App., 472; Jones v. State, 29 Texas Crim. App., 20; Pratt v. State, 50 Texas Crim. Rep., 227; Combs v. State, 52 Texas Crim. Rep., 617; Baggett v. State, 144 S. W. Rep., 1136; 1 Greenleaf on Evidence (9 ed.), Secs. 218, 219, 442, 443; 1 Bish. Cr. Pros., Secs. 1235, 1236. For many other cases see cases cited. These matters were properly saved in the court below and timely presented there and here.

From the standpoint of the State's evidence, the jury was warranted in finding that appellant was in Weatherford a part of the day until about say 3 or 3:30 o'clock in the evening. From the defendant's standpoint, and the statement introduced against him through Barker, and the purported written confession, he was not in Weatherford at all during the day, and these latter matters were all introduced by the State. They were exculpatory on their face, showed an impossibility for him to have passed the forged instrument or committed the forgery on the day indicated. Under all the authorities, so far as I know about, from any standpoint, if he was not in Weatherford on the day of the alleged forgery and passing the instrument, and the State relied upon the fact that he was there to prove his guilt, then having introduced evidence that he was not there, it was incumbent upon the court to charge the jury that the State must show the exculpatory matters false, otherwise the jury would acquit. It may be stated as a sound proposition, and the writer thinks it not debatable, if the action of the court probably brought about a more injurious verdict to appellant than would probably have otherwise occurred without such action, that action or ruling becomes reversible error. If the court had charged the jury as the law has been laid down in the decisions in Texas, the jury might have given appellant a much more favorable verdict, even an acquittal. If the jury had been instructed that the State must show this evidence false in order to secure a conviction, the jury might have found him not guilty. Wherever the ruling, being erroneous, leads, or probably leads, to a conviction, it is reversible error. Or concede the guilt of the defendant, if the action of the court is error and he received a higher punishment than the minimum, then the error is fatal and a reversal should occur. The accused is entitled to a fair trial under the rules of law. It is not sufficient that this court may think the defendant is guilty as a justification to set aside or override the well established principles of law or settled jurisprudence. I wish here to reproduce some observations of Judge Roberts, than whom no greater judge has ever occupied the bench in Texas or any state in the Federal Union

His name has been a household word as a great judge wherever our jurisprudence is known, and in Texas it would be a useless consumption of words to eulogize his memory both as statesman and jurist. In Duncan v. Magette, 25 Texas, at page 245, this language, written by Judge Roberts, is found:

"Although the counsel on both sides rely upon the rules of law as respectively presented by them, it is obvious that the great argument, whether expressly developed or not, by which those rules are sought to be discovered, interpreted and enforced, consists in an appeal to the sense of justice of the court. The opinion of the court in this case does not yield to the force of that appeal. Having written it, I avail myself of the opportunity afforded by this application, to present my own views upon the foundation and force of this appeal to the sense of justice of the court, whether used as an influencing consideration, in interpreting and enforcing the rules of law, or directly urged as the basis of judicial action. *A frequent recurrence to first principles is absolutely necessary in order to keep precedents within the reason of the law.* (Italics mine.)

"Justice is the dictate of right, according to the common consent of · mankind generally, or of that portion of mankind who may be associated in one government, or who may be governed by the same principles and morals.

"Law is a system of rules, conformable, as must be supposed, to this standard, and devised upon an enlarged view of the relations of persons and things, as they practically exist. Justice is a chaotic mass of principles. Law is the same mass of principles, classified, reduced to order, and put in the shape of rules, agreed upon by this ascertained common consent. Justice is the virgin gold of the mines, that passes for its intrinsic worth in every case, but is subject to a varying value, according to the scales through which it passes. Law is the coin from the mint, with its value ascertained and fixed, with the stamp of government upon it which insures and denotes its current value.

"The act of moulding justice into a system of rules detracts from its capacity of abstract adaptation in each particular case; and the rules of law, when applied to each case, are most usually but an approximation to justice. Still, mankind have generally thought it better to have their rights determined by such a system of rules, than by the sense of abstract, as determined by any man, or set of men, whose duty it may have been to adjudge them.

"*Whoever undertakes to determine a case solely by his own notions of its abstract justice, breaks down the barriers by which rules of justice are erected into a system, and thereby annihilates law.* (Italics mine.)

"A sense of justice, however, must and should have an important influence upon every well organized mind in the adjudication of causes. Its proper province is to superinduce an anxious desire to search out and apply, in their true spirit, the appropriate rules of law.

It cannot be lost sight of. In this, it is like the polar star that guides the voyager, although it may not stand over the port of destination.

"*To follow the dictates of justice, when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever consequence they may lead, is a duty. This applies as well to rules establishing remedies, as to those establishing rights. These views will, of course, be understood as relating to my own convictions of duty, and as being the basis of my own judicial action.*" (Italics mine.)

In thus stating the rules of law, drawing the distinction between abstract or substantial justice, if you please, no better statement has been made. If so it has not come under the observation of the writer, and the above quotation comes from the pen of the great Roberts. If he had not written anything else as an opinion than the above, or if his great mind had not thrown light upon any other page of judicial history, this quotation is enough to have immortalized his name and memory as a great judge. In these latter days, where the great principles and rules of law are sought to be diverted from their high office and position in the machinery of government, this language of Judge Roberts is peculiarly applicable. It is necessary to at least occasionally refer to the first principles of law, right and justice in order that the jurisprudence of our country may be kept pure and uncontaminated by strenuosity or other outside influences that seek to attack the citadel of liberty or bring about its fall. I do not know that anything could be added to what Judge Roberts said. I doubt if the precision, accuracy and strength of the proposition will ever be stated in finer language or in terser strength. It affords the writer pleasure occasionally to go back to first principles and see what the great fathers of our jurisprudence wrote and what they thought is meant by constitutional government in this country. This may be out of joint and harmony with the times, but it is right; and right, truth and justice in the end will prevail. I shall be content to agree with the great judges who have written along this line heretofore and let whatever of work, writing, and conviction of the right attributable to me in the judicial history of my country go hand in hand with the above quotation from Judge Roberts.

There is another question in the case that I believe ought to reverse the judgment, but my brethren have not thought so, and in order to reach that conclusion had to overrule some of the previous work of this court. The question I refer to is the reproduction of the evidence of a man named Bryant, who had on a former occasion testified in the case. The testimony was reproduced through the witness Erwin. He stated that he was constable who succeeded as such the absent witness Bryant; that he knew Bryant when he lived in Parker County, and heard from him on the 3rd of January. That Bryant left this country with his (witness') knowledge, and that when he went away he took his household goods and effects with him. Witness knew at

the time Bryant left Parker County that he said he was moving out of the State; that Bryant so informed him, and further that he was going to some point in Georgia. That since Bryant left witness had received a letter from him through the mail. He said: ''I am pretty sure this is his signature to the letter.'' He testified he had also received a money order from Bryant. The witness had never seen Bryant in Georgia, and had never seen him anywhere out of the State, but saw him the day he left; he was then in Texas. Quoting from him: ''I do not know his whereabouts only by this letter and the money order, December 4, the date of this letter, and January 3, some four months ago. I do not know at this time where he is; could not swear that he is not in Texas at this time, or for the last month, or two or three months. All I know of his whereabouts is by the letter and by a money order I got. That was December 4 I got the money order, and then he wrote the other letter.'' This occurred about ten days after Bryant is supposed to have left the State, that he received the money order. This is the predicate and all the predicate introduced by the State as a basis for the reproduction of the testimony of the alleged absent witness Bryant. Under none of the authorities that have been called to my attention is this sufficient. It has always been held in all the cases that the bare fact that the witness was out of the State at the time of the second trial would not of itself be sufficient ground for admitting proof of his former testimony in a criminal prosecution, unless admitted by counsel. This proposition was asserted in Sullivan v. State, 6 Texas Crim. App., 319. In that case this language is found as a predicate: ''He (the absent witness) was here for several months, to see after his brother, who was in jail, charged with murder. He was here from January until August of last year. He went away out of the State. I wrote a letter to the postmaster at Marion, Massachusetts, inquiring for Owen Dean. I got a reply, he says, saying that Dean was at Boston, Massachusetts. Among his friends and acquaintances it is generally understood that he is at Boston, Massachusetts. He said that Dean came here from Boston, Massachusetts.'' The court said this was not sufficient, and reversed the judgment in the Sullivan case. This rule has been followed in the other cases cited wherever the question has come. This proposition has been reasserted as late as Pace v. State, 61 Texas Crim. Rep., 436. See also Cooper v. State, 7 Texas Crim. App., 194; Martinas v. State, 26 Texas Crim. App., 91; Menges v. State, 21 Texas Crim. App., 413; Ripley v. State, 58 Texas Crim. Rep., 489. My brethren overrule the Ripley case, but they leave the others unimpaired. The writer wrote the opinion in the Ripley case. It was concurred in by Judge Ramsey. The Ripley case is but a reproduction of all the other cases decided in this State, and is in entire harmony with and based upon them. It would be useless to follow this further, my brethren having determined to overrule appellant's contention in this matter. I simply enter this as my dissent on the question.

There is another question I might notice. My brethren hold that Barker did not have appellant under arrest at the time he had the conversation with him, which was produced before the jury. I shall reproduce Barker's testimony in this connection: "When I called the defendant off there I asked him when was the last time he was in Weatherford, and he said he had not been in Weatherford since—I am not positive now whether the last day in March or the first Monday in March, but one or the other was the last time he had been here. Then I asked him if he had been here yesterday and he said no, he was not here since—either the last day of March or the first Monday in March." The bill further recites Barker's testimony as follows: "I just called him off there to talk with him. I had him in my custody or charge when I called him off to one side. If he had tried in any way to escape I would not have permitted it; would not have allowed him to escape. I had him in custody for the alleged charge for which he is on trial now." This conversation occurred the day following that on which the check was said to have been passed on the bank. It is a little difficult some times to determine when a party is or is not under arrest, but under my understanding of the law as applicable to the statement of facts made by Barker, it is shown that appellant was under arrest. The bill shows he was not warned, the statements were not in writing, and are, therefore, inadmissible. The statements of appellant made to Barker on this occasion were used against him as incriminating facts in view of the whole testimony, and to impress the jury with the fact in the light of the other testimony of the State, that he was in Weatherford that day and not in Fort Worth; that is, that appellant was telling a falsehood about his not being in Weatherford. Therefore, it was evidence of guilt and incriminating in its nature. This being true, under our authorities, it was in effect a confession as much so as any fact that is incriminating when stated by the defendant under circumstances as regarded in that light of authority in this State and this under all the cases as I understand them. The admission of this testimony was error. Nolen v. State, 9 Texas Crim. App., 419; Binkley v. State, 51 Texas Crim. Rep., 54; and cases there cited; see also Patrick v. State, 74 S. W. Rep., 550. In the Patrick case it was said: "It is often a serious question of fact, as found in the records coming before this court, to ascertain at what point a prisoner making a statement may be considered under arrest. There are two rules which may be deduced from the authorities as being correct: First, if the party is under arrest, the confession should be excluded; and, second, if, by the acts and conduct of the officer, or those approaching or having the party in charge, he is led to believe he is under arrest, or in his own mind is conscious of being under restraint, then the confessions are inadmissible. If the officer is to be believed, then he states: "I had him in my custody or charge when I called him off to one side. If he had tried in any way to escape I would not have permitted it; would not

have allowed him to escape. I had him in custody for the alleged charge for which he is on trial now.''

There are other questions in the case that might be interesting to discuss which were detrimental to appellant, and in my judgment not legally in the case against him. Appellant may have been guilty of this. matter; the jury thought so, and convicted him, but that ought not matter, if the questions presented to this court show such error as prevented a fair and legal trial, for in such case it is the duty of this court, as I understand the duties of appellate courts, to award him another trial that he may be tried under the rules of law. It is the only way I have been taught that a legal trial can be had or that legal justice can be attained. I do not believe appellant has had such a trial as is demanded by the law. He has invoked the rules of law, in my judgment, but in vain. I believe his contentions to be correct and right. I therefore cannot agree with my brethren. I think the judgment ought to be reversed and the cause remanded.