## CHARLES PEDDY v. THE STATE.

### *No. 71.   Decided February 11.*

**1. Murder—Evidence—Admissibility of Testimony Taken Before Examining Court — Predicate for.—** See the opinion for a state of facts *held* sufficient to establish a predicate under article 772, Code of Criminal Procedure, for the admission of the testimony of a witness before an examining court who had, since it was taken, removed beyond the jurisdiction of the court to make her home in another State.

**2. Same. —** The fact that since testifying at a previous trial, or after a witness' testimony had been taken before an examining court, the witness had been carried away by a private prosecutor to make her home in another State, furnishes no valid reason why the testimony should be excluded.  The State should not be deprived of such testimony on account of the conduct of the private prosecutor.

**3. Conspiracy—Juror—Opinion as to the Guilt or Innocence of a Coconspirator.—** On a trial for murder, where appellant was jointly indicted as a principal with three others, and at a previous trial of one of these parties it had been made to appear that H., one of them, was the prime instigator, who had concocted as well as taken an active part in the execution of the plan of the murder, *held*, in empanelling the jury the court did not err in refusing to permit counsel for defendant to ask the jurors whether, from hearsay or other-

wise, they had established in their minds a conclusion of the guilt or innocence of the prime mover and coconspirator, H. On such examination the true question is the juror's opinion of the guilt or innocence of the *accused*.

Appeal from the District Court of Shelby. Tried below before Hon. S. W. Blunt, Special Judge.

Appellant was jointly indicted with Fayette Harris, William Harris, Jr., and James Stanton, for the murder of Jo Shields. On application of defendants a severance was had. William Harris, Jr., was first put upon trial and convicted, his punishment being assessed at a life term in the penitentiary. See his case, reported ante, p. 411. This appellant was next put upon trial, and his trial also resulted in a conviction for murder in the first degree, with the punishment assessed at a life term in the penitentiary. The leading facts in the case will be found in the report of the companion case of William Harris v. The State, ante, page 411, the evidence in both cases being substantially the same.

*T. C. Davis* and *H. B. Short*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, Judge.—Appellant was convicted of murder, and his punishment assessed at imprisonment for life, from which judgment he appeals to this court.

There are but two questions raised in this case that have not already been considered in the companion case of William Harris, Jr. Harris v. The State, ante, p. 411.

1. Appellant complains that the court erred in permitting the evidence of Mrs. Pinson, taken before the examining court, to be read. Mrs. Pinson was the old lady, 70 years of age, upon whose place Jo Shields was living at the time he was taken out and hung by a mob. She testified at the trial of William Harris, Jr., one of the conspirators, and was the most important State's witness to the homicide. She had previously testified before the examining court, and her testimony had been reduced to writing, and signed by her. After the trial of William Harris, Jr., she removed to the State of Alabama, and on the present trial the State sought to introduce her written deposition, to which the defense objected, upon the ground that it was not shown by the State that Mrs. Pinson was not then in the State of Texas. The statute declares, that the deposition of a witness in a criminal cause, taken before an examining court and reduced to writing, and certified according to law, where the defendant was present and had the privilege of cross-examining the witnesses, may be read in evidence when it is shown upon oath that since the depositions were taken the witness has removed from the State. Code Crim. Proc., arts. 772, 774.

The State introduced the following proof:   J. C. Shields testified:   He knew Mrs. Pinson.   " She resides now in Alabama.   She may be on her way to Texas.   She has been in Alabama ever since the April Term of the District Court of Shelby County.   [This statement was made November 23, 1892.]   She stayed at my house a few days after the April Term, in Wood County, Texas; then left my house, with the declaration that she was going to make her home with my brother, in Alabama.   She left with that understanding, in company with my brother."   Witness received a letter on the 17th of November from his brother, inclosing a message from Mrs. Pinson.   She was in Alabama.   She had carried her bedding and some household furniture with her.   Witness had written to her to be here on the 20th of November, and did not know whether she was on her way or not.   Mrs. Pinson is 70 years old."   We think it is sufficiently shown that the witness Mrs. Pinson had permanently removed from Texas to Alabama, and as the time fixed for her appearance had passed, and there was no promise on her part to attend the trial, it was certainly a reasonable conclusion on the part of the court that she was not coming, and was not in the State.   Conner v. The State, 23 Texas Ct. App., 379; Gilbreath's case, 26 Texas Ct. App., 318.

But it is claimed that Mrs. Pinson was carried away by the private prosecutor, to-wit, the brother of Jo Shields, out of the State, and for that reason the testimony should be excluded.   We are unable to see why the State should be deprived of this testimony on account of the conduct of a private prosecutor.   A comparison between the written deposition of Mrs. Pinson and her testimony as given at the April Term would suggest that appellant ought not to complain of her departure.   We do not think that under the circumstances of this case the court erred in admitting the deposition.

2.   Appellant complains that the court erred in not permitting appellant's counsel to ask the jurors whether, from hearsay or otherwise, they had established in their minds a conclusion of the guilt or innocence of Fayette Harris.   It is contended that it was a good cause for challenge in this case, because, in order to establish the guilt of appellant, the State had to prove the guilt of Fayette Harris, and then, from the fact that he was in the employment of Fayette Harris, and his association with him immediately preceding the homicide, infer that he was a party to the conspiracy to kill Jo Shields.   If such were the facts the position would be well taken.   There is no question the theory of the State was, that Fayette Harris was the instigator and prime mover in the conspiracy, but it is equally true that the evidence of appellant's guilt is as certain and definite as that of Fayette Harris.   Independent of the question of conspiracy, Mrs. Pinson swears that the appellant was present at the homicide; that she knew and recognized his voice, as he threatened her and warned her to go back.   The facts, that he lived on Fayette Harris' place; that he

stated to McLaughlin, the day of the homicide, that the deceased was liable to be taken out at any moment and hung; that he had a long conversation with Fayette Harris on the evening of the homicide; that he was found with a spot of blood on his coat next morning, and a spot of pitch, from a burning torch, upon his vest, are but corroborative of the direct testimony of his presence. The fact therefore of a belief in the guilt of Fayette Harris was not necessary to the conviction of appellant.

If Fayette Harris had been convicted, and appellant was subsequently placed on trial, it could not be contended that a conclusion as to the guilt of Fayette Harris could disqualify a juror; and why, then, could it disqualify before the trial of Fayette Harris? This question was settled in this court (and we think correctly) in the Thompson case, 19 Texas Court of Appeals, 611, where Thompson, Kennedy, and Hendricks formed a conspiracy to kill one Hill (see 19 Texas Court of Appeals, 614, paragraph 9, and Kennedy v. The State, Idem, 633, paragraph 13), which was carried into execution. They severed on trial; and on the trial of Thompson a juror stated on his voir dire he had heard the previous trials of the codefendants, Kennedy and Hendricks, who had been convicted, and the convictions, he thought, were all right, but he had formed no opinion as to the guilt or innocence of defendant. The court held him competent; that the true question was the juror's opinion as to the guilt or innocence of the accused. Pierson's case, 21 Texas Ct. App., 57. Fayette Harris may have been convicted of the offense, yet it would disqualify no one who had heard the testimony, and was fully persuaded of his guilt, but at the same time formed no conclusion as to the guilt or innocence of Charles Peddy, as the jurors on their voir dire swore was the fact.

As to the sufficiency of evidence, we may say, that the evidence was carefully considered in the case of William Harris, to which this is a companion case. The facts proved in both cases are substantially the same, and were reviewed in full in the opinion in the Harris case; the only difference being the testimony in this case brings out more clearly the fact that there are others concerned in the conspiracy to kill Jo Shields than the parties here indicted.

We find no reversible error, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.