James RUSSELL aka Sugarman Russell aka Sugarman, Appellant,

v.

The STATE of Texas, Appellee.

No. 57906.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 10, 1980.

Randolph L. Schaffer, Jr., C. C. Divine, Houston, for appellant.

Carol S. Vance, Dist. Atty., and Calvin A. Hartmann and Ken Sparks, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Indicted for robbery by assault denounced by Article 1408 of the former penal code, appellant entered a plea of not guilty to a jury that found him guilty and assessed punishment. He is before us represented by *two lawyers*, each of whom has filed a comprehensive brief in his behalf.[1]

The most vigorously contested issue in the case is first presented. It concerns a pre–trial ruling by the trial court denying a motion to suppress examining trial testimony and the in–trial ruling admitting the testimony and permitting it to be read to the jury. The facts giving rise to this situation may be briefly stated here.

According to an accomplice witness, on April 3, 1972 he and three other males, including appellant, drove to the location of a Radio Shack in Houston. They entered the store, looked around and left. In a while they returned and it suffices to say that the witness was in the process of committing theft when some ringing sound in the store prompted his leaving it whereas the others made off with "what they wanted" and put it in the trunk of the vehicle appellant was said to have driven to the Radio Shack. Unable to describe or otherwise identify the store attendant, the witness denied seeing any type of firearm or weapon that night. He admitted that the four then drove to the residence of one of them and the loot was divided, he later getting his part from one other than appellant, and was unable to say what, if any, portion appellant received. On cross–examination the accomplice recalled that he did all the talking to the attendant the first time but did not know who was doing the talking the second time.

Following an investigation of the incident and arrests of several persons, an examining trial was held September 25, 1972 before a justice of the peace of Harris County. The accused named in the cause number were Alfred Joseph, Jr., the party to whose residence the accomplice witness said the stolen property was taken, and James Russell, claimed by the State to be the same person by that name identified by the accomplice witness as having driven to the Radio Shack and, with the others, taken the stolen property.[2] The only witness who testified at the examining trial was the Radio Shack attendant, the late Thomas Stearns.[3] For present purposes, it is

---

1. Appointed counsel at trial was also appointed to represent appellant on appeal; his brief was filed first in time and presents seventeen grounds of error; retained counsel is on appeal only; his brief presents five grounds of error. Happily, there is a great deal of overlapping. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

   The inordinate delay in handing down this opinion in a case submitted May 15, 1979, had been occasioned by our awaiting the decision of the Supreme Court on a point similar to the principal confrontation issue in this case. Certiorari was granted April 16, 1979 in *Ohio v. Roberts*, 441 U.S. 904, 99 S.Ct. 1990, 60 L.Ed.2d 372 (1979) but the opinion not delivered until June 25, 1980, —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed.2d 597.

2. We have carefully stated the matter as to James Russell for there is some contention that the person by that name at the examining trial was not shown to have been the same person on trial before the jury.

3. In *James Russell v. State*, our number 60,412, a capital murder case submitted January 17, 1979, the Court has now decided an appeal by our appellant here from a conviction in which he was found guilty of causing the death of Thomas Stearns March 14, 1974 by shooting him to death in an isolated wooded area of Fort Bend County. The opinion affirming judgment

enough to say that Stearns testified he was the victim of an armed robbery and identified the accused said to be James Russell as being present and armed with a weapon, a "small gun." In other words, his examining trial testimony filled in the critical elements of the offense that the accomplice witness had not provided.[4]

Appellant contends that admitting the examining trial transcript denied his right to confront the witness, that the transcript was not properly certified, that a proper predicate showing that the contents of the transcript accurately reflected the actual testimony was not laid and there was an insufficient showing that appellant was the same James Russell who was present at the examining trial.

We need not record the pendulum swing of the law in this Court on the point of constitutional confrontation being offended by reproduction of testimony of an unavailable witness given at a prior proceeding.[5] The rule ultimately settled was from an understanding of the common law as it existed in England at the time of the Declaration of Independence, *Robertson*, supra, 142 S.W. at 546, but it now must be considered in light of *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) and its progeny.

In *Pointer v. State*, 375 S.W.2d 293 (Tex. Cr.App.1963) the opinion went off on the proposition that Fourteenth Amendment guarantee of due process was not denied by the fact that Pointer was not represented by counsel at the examining trial. The

point made by this Court in its original opinion as well as on appellant's motion for rehearing, 375 S.W.2d at 295, 296–297, was that an examining trial is not a "critical stage" in criminal proceedings for its purpose is limited to determining "whether the defendant is to be discharged, committed to jail, or admitted to bail." Except as it may be said that the issue was ruled *sub silentio*, as subsidiary to the denial of right to counsel point, the *Pointer* opinion from this Court does not address denial of confrontation. However, the opinion of the Supreme Court in the cause does so directly on facts that are strikingly similar to those in the instant case. Thus, Pointer and one Dillard, having been arrested on a charge of robbing by assault Kenneth W. Phillips of an amount of money in violation of old Article 1408, were present at an examining trial. As chief witness for the State, Phillips gave his version of the alleged robbery in detail, identifying Pointer as the man who robbed him at gunpoint. Dillard tried to cross–examine Phillips but Pointer did not, although he was said to have tried to cross–examine some other witnesses at the hearing. After indictment but before trial Phillips moved to California and the State satisfactorily proved that he did not intend to return to Texas and, accordingly, offered the examining trial transcript of Phillips' testimony against Pointer. In deciding the issues raised, the Supreme Court expressed the nature and purpose of an examining trial in Texas similar to the characterization given by this Court in its opinion.[6] Holding

---

of conviction for capital murder is reported at 598 S.W.2d 238.

**4.** Discussing another ground of error, the State maintains it does not rely upon testimony of the accomplice witness to sustain the conviction, that it was offered "in order to have a live witness."

**5.** From 1896 to 1912, as described in *Robertson v. State*, 63 Tex.Cr.R. 216, 142 S.W. 533 (1912), it went like this:

"... The questions here presented have been the cause of much controversy in this Court since the decision in the case of *Cline v. State*, 36 Tex.Cr.R. 320, 36 S.W. 1099, 37 S.W. 722 ... The Cline case was overruled in the case of *Porch v. State*, 51 Tex.

Cr.R. 7, 99 S.W. 1122, and recently the *Porch* case has been overruled and the rule announced in the *Cline* case held to be correct in the case of *Kemper v. State*, [63 Tex.Cr.R. 1,] 138 S.W. 1025."

And, after again revisiting the matter at length:

"... and the case of *Kemper v. State* ... is overruled on this point and *Cline v. State* ... and all cases following it, are again overruled, ...."

**6.** "But the State informs us that ... pleas of guilty or not guilty are not accepted and that the judge decides only whether the accused should be bound over to the grand jury and if so whether he should be admitted to bail," 380 U.S. at 402, 85 S.Ct. at 1067.

that the Sixth Amendment right of an accused to confront witnesses against him is "a fundamental right made obligatory on the State by the Fourteenth Amendment," and that the protection of the confrontation guarantee is judged by the same standards that protect these personal rights against federal encroachment, the Court further held:

> "Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross–examine Phillips, its introduction in a Federal court in a criminal case against Pointer would have amounted to denial of the privilege of confrontation guaranteed by the Fourteenth Amendment .... [I]t follows that use of the transcript to convict petitioner denied him a constitutional right, and that his conviction must be reversed." [7]

■ While the Code of Criminal Procedure was enacted in 1965 to become effective January 1, 1966, there is no particular indication that the opinion of the Supreme Court in *Pointer* was taken into consideration in drafting and adopting the additions in Article 39.01, V.A.C.C.P.[8] Nevertheless, the qualifying phrase in Article 39.01, that the defendant "had the privilege afforded of cross–examining the witness," must be read, in light of *Pointer* at least, as the deposition having been taken "at a time and under circumstances affording (defendant) through counsel an adequate opportunity to cross–examine . . ."

In *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) the Supreme Court revisited the problem in resolving the question before it:

> "The question presented is whether petitioner was deprived of his Sixth and Fourteenth Amendment right to be confronted with the witnesses against him at his trial in Oklahoma for armed robbery, at which the principal evidence against him consisted of the reading of a transcript of the preliminary hearing testimony of a witness who at the time of trial was incarcerated in a Federal prison in Texas."

The facts were that Barber and one Woods were jointly charged with the robbery and at the preliminary hearing were represented by the same retained counsel, a Mr. Parks. When, during the course of the hearing, Woods agreed to waive his privilege against self–incrimination, Parks withdrew as his attorney but continued to represent Barber. Woods then gave testimony that incriminated Barber. Parks did not cross–examine Woods, although an attorney for still another co–defendant did. While the primary facet of the case is the sufficiency of the effort to obtain the presence of Woods at the trial, and the Court found that a good faith effort had not been made, in addressing the contention by the State of Oklahoma that Barber had waived his right to confront Woods at trial by not cross–examining him at the preliminary hearing the Court rejected the contention on two grounds, the second being discussed and disposed of as follows:

> "Moreover, we would reach the same result on the facts of this case had petitioner's counsel actually cross–examined Woods at the preliminary hearing .... The right to confrontation is basically a trial right. It includes both the opportunity to cross–examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more

---

7. On its way to that conclusion the Court contrasted our examining trial, as it understood it, with a "full fledged hearing." "The case before us would be quite a different one had Phillips' statement been taken at a full–fledged hearing at which petitioner had been represented by counsel who had been given a complete

and adequate opportunity to cross–examine." 380 U.S. at 407, 85 S.Ct. at 1069–-1070.

8. Compare "Introduction to 1965 Revision, Texas Code of Criminal Procedure," 1 V.A.C.C.P. pp. xv, especially at xix, *et seq.*

limited one of determining whether probable cause exists to hold the accused for trial."

Two years later, in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court may have retreated somewhat from its expressed skepticism of an examining trial or preliminary hearing affording an adequate opportunity for cross–examination. There the story of a minor that he was selling marihuana supplied by Green was "subjected to extensive cross–examination by respondent's counsel" at a preliminary hearing—"the same counsel who represented respondent at his subsequent trial," 399 U.S. at 151, 90 S.Ct. at 1931, under circumstances "closely approximating those that surround the typical trial," *id.* at 165, 90 S.Ct. at 1938. The Supreme Court opined that the statement of the minor would have been admissible at the subsequent trial if he, the minor, had been actually unavailable. Further elaborating, the court was unable to find the particular preliminary hearing it was considering "significantly different" from an actual trial and, looking again at *Pointer v. Texas*, supra and *Barber v. Page*, supra, the court summed up, 399 U.S. at 166, 90 S.Ct. at 1939:

"In the present case respondent's counsel does not appear to have been significantly limited in any way in the scope or nature of his cross–examination of the witness Porter at the preliminary hearing. . . . (T)he right of cross–examination then afforded provides substantial compliance with the purposes behind the confrontation requirement . . ."

Furthermore, following in the wake of *Pointer v. Texas, Barber v. Page*, both supra, and their progeny, *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972) teaches that:

"The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury . . .' and to 'afford the trier of the fact a satisfactory basis for evaluating the truth of the prior statement,' (i)t is clear . . . that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability' referred to" in *Dutton v. Evans*, 400 U.S. 74, 88–89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970).[9]

For the Supreme Court, Mr. Justice Rehnquist then proceeded to point out that the contested testimony was received during "a trial of a serious felony on the merits, conducted in a court of record before a jury, rather than before a magistrate," and in the margin noted the "significant difference between the nature of examination" at each, as discussed, *inter alia*, in *Barber v. Page*, supra; that Stubbs was represented by counsel who "could and did effectively cross–examine prosecution witnesses;" and that the cross–examination of the unavailable witness was not inadequate for the reasons given by the court below. He then concluded:

"Since there was adequate opportunity to cross–examine Holm at the first trial, and counsel for Stubbs availed himself of that opportunity, the transcript of Holm's testimony in the first trial bore sufficient 'indicia of reliability' and afforded ' "the trier of fact a satisfactory basis for evaluating the truth of the prior statement," ' *Dutton v. Evans*, 400 U.S. at 89, 91 S.Ct. at 219."

Following *Pointer* and *Barber*, supra, this Court has on several occasions dealt with the issue in similar contexts.[10] *Carver v. State*, 510 S.W.2d 349 (Tex.Cr.App.1974); *Forbes v. State*, 513 S.W.2d 72 (Tex.Cr.App. 1974); *Raley v. State*, 548 S.W.2d 33 (Tex.

9. We read Mr. Justice Rehnquist to mean whatever "indicia of reliability" are appropriate to the situation not those particular ones utilized in *Dutton v. Evans*.

10. The first appears to be *Whitehead v. State*, 450 S.W.2d 72 (Tex.Cr.App.1968, 1969) but the ultimate result there is not especially illuminating here.

Cr.App.1977). Though the varying setting raised slightly different issues and produced different results, in each case this Court consistently stated or reiterated substantially what was set forth in *Carver*, supra:

". . . To be admissible it must be shown that the witness' testimony at the former trial or hearing was given under oath, that it was competent, that the accused was present and had adequate opportunity to cross–examine him through counsel, that the accused was a defendant at the former trial or hearing upon the same charge. (Citing authorities) Such predicate must be clearly and satisfactorily established before such testimony can be reproduced.

\* \* \* \* \* \*

Where the State seeks to reproduce testimony of an absent witness given at a prior hearing, it has the burden of establishing an exception to the right of confrontation. (Citing authorities)"

In *Carver*, the reproduced testimony was that of confederates of the accused given in a juvenile hearing and the error, if any, in failing to show that they were unavailable was harmless beyond a reasonable doubt because "untainted" evidence provided overwhelming support for the judgment of conviction. In *Forbes*, supra, the reproduced testimony was a deposition of a witness taken by the State with appellant present and represented by counsel who expressly disclaimed any objection to the deposition and reserved the right to object if the witness was in fact available to testify at the trial on the merits; again, whether the State failed to lay the proper predicate concerning a good faith effort to secure attendance of the witness, if error, was held harmless because the "unavailable" witness was not the sole incriminating witness and other "untainted" evidence provided overwhelming support for conviction. In *Raley*, supra, the reproduced testimony was that of an injured party who had testified as a witness in an earlier trial that resulted in mistrial and the turning point was whether the State had made a good faith effort to secure his attendance; the Court held the effort had not been made and, given that no evidence other than the testimony of the absent witness would establish guilt, admitting the reproduced testimony was harmful error.

■ From these authorities, and rearranging the statement somewhat, we glean a shorthand rendition of the rule applicable in this case to be: *In seeking to reproduce testimony of a deceased witness given at a prior examining trial, the State has the burden of establishing clearly and satisfactorily that the testimony was given under oath, that it was competent, that the accused on trial is the same accused who was present, as an accused, at the examining trial and that the accused had adequate opportunity*[11] *through counsel to cross–examine the deceased witness.* Supplementing this constitutional test that does not otherwise alter or modify them are the statutory standards of Article 39.01: That the deposition be duly taken before an examining trial and reduced to writing and certified according to law; that is, when a statement of facts taken by a court reporter is, according to Article 16.09, V.A.C.C.P., authenticated by State and defense counsel

---

11. What we anticipated the Supreme Court would decide in *Ohio v. Roberts*, supra, in note 1, *ante* is whether "opportunity" to cross–examine is enough to satisfy the Confrontation Clauses though it is not taken by actual cross–examination. But it did not:

"We need not decide whether the Supreme Court of Ohio correctly dismissed statements in *Green* suggesting that the mere opportunity to cross examine rendered the prior testimony admissible.

\* \* \* Nor need we decide whether *de minimus* questioning is sufficient, for defense counsel in this case tested Anita's testimony with the equivalent of significant cross–examination."

*Id.* at 100 S.Ct. at 2541. Until these issues are decided, we draw from *Pointer* and other cases in which there was at least some cross–examination the lesson that mere opportunity will not suffice.

and approved by the presiding magistrate, and delivered to the clerk of the trial court, Art. 17.30.

Thus, the thrust of the rule is directed more than to determining whether the qualifying conditions have been met so as to warrant the further decision as to its admissibility; rather, the emphasis is on ensuring that, once the underlying qualifying conditions have been met, there is a clear and satisfactory showing that the facially competent testimony was given in the presence of the accused who, through counsel, had adequate opportunity to test the testimony through cross–examination. We now turn to application of the rules.

■ As statutorily structured, an examining trial held by a magistrate is a proceeding that does not provide an adequate opportunity· for cross–examination. From the provisions of Chapter 16, V.A.C.C.P., the sole function of the magistrate conducting the examining trial is to make a finding on the issue of probable cause for the purpose of committing to jail, discharging or admitting to bail the accused, Article 16.17, V.A.C.C.P. *Pointer v. State*, supra, 375 S.W.2d at 295. Thus it is that once an indictment has been returned by a grand jury satisfied that probable cause exists, the principal purpose and justification for the examining trial have been accomplished, *McDonald v. State*, 513 S.W.2d 44, 46 (Tex. Cr.App.1974).[12]

Indeed, in *Pointer v. Texas*, supra, the Supreme Court contrasted the limited purpose of our examining trial, as explained to it by the State and the *Pointer* opinion of this Court, with "a full–fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross–examine," 380 U.S. at 407, 85 S.Ct. at 1069. See also the general comparison of cross–examination as a trial right of confrontation with the "less searching exploration" in a preliminary hearing, *Barber v. Page*, supra, 390 U.S. at 725, 88 S.Ct. at 1322.

■ From the statutory contemplation of an examining trial it does not necessarily follow, however, that every examining trial withholds a complete and adequate opportunity to cross–examine the complaining witness and any others. Whether the requisite opportunity existed in a particular proceeding depends upon all of the surrounding circumstances. Bearing on the issue are such factors as matters that are material to the ultimate finding concerning probable cause, limitations generally imposed by the magistrate as to scope and depth of permitted cross–examination, constraints deterring defense counsel from extending cross–examination into explorations of details, reflections of a properly authenticated record of cross–examination as actually conducted, intimations of ineffective assistance of counsel and others that may appear from time to time to be significantly weighty. With a case by case review, experience has taught us that ·even the finest prescience

12. Given the nature of an examining trial, its conduct and the rulings made by the examining magistrate are necessarily rarely susceptible to review for if the accused be discharged, the State cannot complain but must present its case to a grand jury; if the accused be admitted to bail, he has no complaint; if the accused be committed to jail he may seek relief by habeas corpus, the proceeding for which is in effect *de novo*. If an indictment be returned, the examining trial proceeding is moot. Such questions have been raised and answered, however, in the Federal system and it has been consistently held under Rule 5.1, F.R.Crim.P. or its predecessors that its purpose is to provide enough information to enable the magistrate to make judgment that charges are not capricious and sufficiently supported to justify bringing into play further steps of the criminal process, *Jaben v. U. S.*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed. 345 (1965), so that a preliminary hearing is less likely to produce extensive cross–examination and impeachment of witnesses than a trial because of the different functions respectively of the trial and the preliminary hearing, *U. S. v. Lynch*, 499 F.2d 1011 (U.S.App.D.C. 1974) and, therefore, cross–examination at a preliminary hearing is confined by the principle that a probe into probable cause is the end and aim of the proceeding, although the line between refutation of probable cause and discovery is oft times thin, *Coleman v. Burnett*, 477 F.2d 1187 (U.S.App.D.C.1973).

cannot project every feature that may become a surrounding circumstance. Again, as a factual matter, the State has the burden of establishing this "exception" to the right of confrontation, *Carver v. State*, supra.

■ Before determining whether the State has met its burden in this case, we must address a threshold matter raised by it. The State presents the interesting proposition that appellant has "waived" his right to object at trial to admission of the examining trial testimony of Tom Stearns and, concomitantly, his right to assert here that the trial court erred in overruling his objections because, the State reasons, by causing the death of Stearns appellant precluded his appearance and live testimony at trial. The State does not refer us to any authority supporting its contention.[13] Assuming arguendo and, because the capital murder case is pending certiorari, without the slightest hint of any view concerning the outcome, we cannot accept the proposition. For, if the provisions of Article 39.01, V.A.C.C.P., be applicable, that the accused has prevented the deposed witness from attending court to testify, one of the qualifying conditions giving rise to consideration of admissibility of the prior statement is met. Thus, that the conduct of an accused may serve to satisfy the preliminary predicate does not excuse the State from its burden of establishing clearly and satisfactorily the prerequisites for actually admitting the examining trial testimony. The notion is, we believe, that the act of an accused or another[14] which renders a witness unavailable at trial affords the State the opportunity to show that the reproduced testimony of the witness qualifies for receipt in evidence in lieu of the absent witness. We reject the proposition and proceed to determine whether the State met its burden with respect to the examining trial testimony, itself.

■ The issue was raised by a motion to suppress the examining trial testimony and it was appellant who presented witnesses at a pre-trial hearing on that motion. Given that posture, it was the appellant who more or less assumed the burden of going forward with the evidence, but at trial it was the State that called witnesses–the reporter and attorney representing appellant at the time of the examining trial–to support its offer of the statement of facts. The theory of appellant was essentially that, just as. contemplated by law, in fact the practice and custom in examining trials conducted by magistrates generally in Harris County and the particular one who presided over the one in question is to restrict cross–examination by the accused of witnesses presented by the State to the probable cause issue. We have reviewed the testimony of four criminal defense lawyers who had been prosecutors in the office of the Harris County District Attorney and, without summarizing it here, it suffices to say that the theory was established by proof. Moreover, the long time reporter[15] of examining trials before the particular magistrate here testified himself that he had taken testimony in hundreds, perhaps thousands, examining trials; that during the month pertinent the magistrate had a heavy daily docket of hearings; that the magistrate did not undertake to adjudge credibility of witnesses; that he often admonished defense counsel to "move along," that he had heard enough on probable cause; and that prosecutors frequently objected on grounds the cross–examination was beyond the bounds of probable cause. In addition, counsel for appellant at the

---

**13.** But see *Porch v. State*, 51 Tex.Cr.R. 7, 99 S.W. 1122, 1124 (1907).

**14.** See *Peddy v. State*, 31 Tex.Cr.R. 547, 21 S.W. 542 (1893): "We are unable to see why the State should be deprived of this testimony on account of the conduct of a private prosecutor."

**15.** We do not identify him as "court reporter" because while he performed as one he was actually an employee of the District Attorney.

examining trial confirmed his familiarity with the practice and custom detailed by other defense counsel and conceded that he did not attempt "to engage in full and complete cross examination" of the witness Stearns in view of that policy and lack of much prior factual information concerning the offense, later explaining that he was not "planning on trying the case at the time."

To all of this the State in its brief rejoins that "although . . . Russell's attorney at the examining trial did not attempt a complete cross examination of Stearns, he was not cut off from the further questioning, and asked those questions he wanted. . . . The Record thus does not support Russell's contention." Whether he was cut off begs the question of adequacy. Indeed, if anything, that he was not suggests counsel recognized and stayed within the settled boundaries drawn by the magistrate. As to satisfying his wants, that was, again, within the constraints imposed.[16]

Given the lessons learned from *Pointer* and its following, the statutory purpose and scheme for an examining trial, the practice and custom by which they are shown to have been conducted in this jurisdiction and which we know generally abounds in the metropolitan areas of this State, and the particular facts and circumstances surrounding the instant examining trial, we are constrained to find that the State has not met the burden imposed on it by the decisions of this Court and of the Supreme Court of the United States, all *supra.*

Unlike the trial court below, which withheld ruling on the confrontation claim in appellant's motion to suppress until it had read the statement of facts, we have not studied the testimony in detail—indeed, we have not been urged to do so—in considering whether constitutional confrontation requisites were satisfied. This, because of the strenuous attack by appellant on its reliability for, among other deficiencies, the absence of statutorily mandated authentication in the manner prescribed by Article 16.09, V.A.C.C.P.

Until the Code of Criminal Procedure was revised in 1965, the predecessor provisions to Article 16.09, V.A.C.C.P., contemplated that the testimony of each witness was to be reduced to writing by or under the direction of the magistrate, presented to the witness for corrections as he may direct and then all testimony thus taken "shall be certified to by the magistrate." See *Pineda v. State*, 101 Tex.Cr.R. 637, 273 S.W. 859 (1925) and *Kirby v. State*, 23 Tex.App. 13, 5 S.W. 165, 169 (1887), both involving statements of the accused, that traced the rule back to *Kerry v. State*, 17 Tex.App. 178 (Ct.App.1884) which did not. In 1965 the following sentence was added to Article 16.09: "In lieu of the above provision, a statement of facts authenticated by State and defense counsel and approved by the presiding magistrate may be used to preserve the testimony of witnesses." The State concedes, as it must, that neither method provided by Article 16.09 was followed.

■ What occurred, according to the steno reporter than employed in the office of the district attorney and who made stenotype notes of the proceedings and testimony during the examining trial in question, was that shortly after the examining trial was completed he dictated his interpretation of his notes into a stenorette tape recording device, passed it on to a typist who then interpreted the recorded words through a

---

16. On this precise point, when questioned about "what else" he would have asked the witness at the examining trial, counsel got out the following before being cut off by the prosecutor:

"I doubt that I would have asked any more questions. I think I probably asked probably what I wanted to ask at the examining trial.

But what I was talking about in regard to cross examination, what I would ask *later* . . . ."

On recross counsel agreed with specifics that were not explored and that those matters "were to be taken up in trial testimony" since "I wasn't planning on trying the case at the time."

typewriter onto the typed page. Completing an original and a copy of the transcription, the typist turned them over to the reporter who ordinarily would check the content of the transcription against the original stenographic notes for mistakes, but in this instance the reporter could not tell the jury that he did so. Without certification of any sort, the reporter transmitted the original transcription to the office of the district attorney, kept the copy among his own possessions—he had neither recollection nor records showing a copy was furnished counsel for the accused at anytime. After completing the transcription, either the typist or the reporter effectively erased the words on the stenotype tape recorder and, when he left the employment of the district attorney in January 1975—some two years and three months after taking them—he destroyed the original notes. At this point, the transcription still was not certified in any fashion. In August 1975 the reporter was contacted by an investigator from the district attorney's office and apparently (precisely what was requested by the investigator was ruled out on a hearsay objection) was asked to certify the original transcription that long ago had been transmitted to the office of the district attorney. As we understand it, the reporter then searched among boxes of transcripts kept in his home and, finding the copy, turned it over to the investigator and, either then or later, after comparing the original and copy prepared and executed a certification of the original. That certification reads in pertinent part as follows:

"I . . . a court reporter and notary public in and for the County of Harris, State of Texas, do hereby certify that the above and foregoing 9 pages of typewritten manuscript constitute a true and correct transcript of the proceedings had and testimony adduced upon the examining trial of the above numbered and captioned cause as more fully set out in the caption hereto.

GIVEN under my hand and seal of office on this 20th day of August, 1975.

/s/
NOTARY PUBLIC
HARRIS COUNTY, TEXAS"

As best we can ascertain from the copy in the record before us, the certification does not show a seal was affixed and we note that one objection leveled at admission of the transcription was that it "is not properly authenticated by seal." [17] The reporter admitted what is evident from the transcription itself: he did not read its contents to Stearns nor ever showed it to him; he did not present it to the presiding magistrate for certification; he did not present it to the attorney for the accused for certification as to its accuracy and, although he did forward it to the district attorney's office, he did not actually ask that anyone there read it for the purposes of certification. See, again, Article 16.09, V.A.C.C.P. Objections, *inter alia*, that the transcription was not shown to be properly certified, were overruled and the transcription was admitted as an exhibit and its contents were read to the jury.

Notwithstanding utter failure of any semblance of compliance with the requirements of Article 16.09, in any respect, the State relies solely on *Serna v. State*, 110 Tex.Cr.R. 220, 7 S.W.2d 543 (1928). There

17. Asked on cross-examination whether the transcription was certified as being accurate when the original was transmitted to the district attorney's office in 1972, the reporter answered negatively, explaining, "We weren't required to put a certification page on at that time."

In truth, a court reporter is never required to make his certification of examining trial testimony; that authentication is done by State and defense counsel and approved by the presiding magistrate in accordance with Article 16.09. Thus authenticated and approved the transcription becomes the "judicial record" that impressed the Supreme Court in *Green*, supra, 399 U.S. at 165, 90 S.Ct. at 1938; as "indicia of reliability" demanded of reproduced testimony by *Mancusi*, supra, 408 U.S. at 216, 92 S.Ct. at 2314. See also *Ohio v. Roberts*, supra, —— U.S. at ——, 100 S.Ct. at 2541, 27 Cr.L. at 3238–3239.

the Court pointed to earlier decisions of this Court which applied a general rule that "(w)here shorthand notes have been taken by a stenographer, transcribed by him, and he under oath states that the evidence was correctly taken and transcribed, the testimony so taken may *in a proper case* be read in evidence" to testimony given at a former *TRIAL,*[18] but it then opines, 7 S.W.2d at 546:

> "We see no reason why the same rule should not apply where the state . . is undertaking to reproduce the testimony of the witness taken upon an examining trial, where the formalities of the statute were not complied with, and therefore the evidence could not be reproduced under Article 750, C.C.P." [19]

Now there are at least two. First a court reporter who appears with notes and transcription of notes of testimony from a former *trial* and vouches for their accuracy does little less than permitted by statute in preparing and certifying a statement of facts for appellate purposes, Article 40.09, §§ 3 and 4.[20] The procedure does not avoid an authentication process such as that legislatively mandated for examining trial testimony—under Article 16.09, supra, and its predecessors, that it be certified by the presiding magistrate and transmitted, along with all other papers in the matter, under seal to the clerk of the proper court, as required by the predecessors to Article 17.-

30, V.A.C.C.P., *Kerry v. State,* 17 Tex.App. 178 (Ct.App.1884). Secondly, as already indicated, in 1965, to Article 16.09 was added the alternative process whereby "a statement of facts authenticated by the State *and defense counsel and approved by the presiding magistrate* may be used to preserve the testimony of the witnesses." And still the alternative authenticated and approved statement of facts is to be delivered, with other prescribed papers, in a sealed envelope to the clerk of the proper court. We believe the salutary purpose of these requirements is to ensure integrity of examining trial proceedings and their incidents, and forestall just such contests as exemplified by the case before us. The *Serna* court simply did not regard and appreciate the compelling significance of complying with "formalities" of the statutory provisions, and we note that, on the precise point at issue here, its headnote 3 has not been cited in any subsequent opinion rendered by any court.[21] The Court seems to have perceived and applied some sort of principle it analogized from reading back to the jury disputed testimony of a trial witness. Yet in *Pineda v. State,* 101 Tex.Cr.R. 637, 273 S.W. 859 (1925), the Court, comprised of the same judges, approved an opinion that rejected the record of a voluntary statement of an accused at an examining trial because it was *not* properly certified by the examining magistrate.[22]

■ In any event, we attribute to the Legislature an acute awareness of the awk-

---

**18.** *Casey v. State,* 50 Tex.Cr.R. 392, 97 S.W. 496 (Tex.Cr.App.1906) permitted impeachment of a defense witness by showing his inconsistent testimony at an earlier *habeas corpus* trial. At work in these cases seems to be some idea of admitting proof that will not offend the "best evidence" rule. That is not our problem.

**19.** Now incorporated into Article 39.01, V.A.C. C.P., the third sentence of the first paragraph.

**20.** "A transcription of the reporter's notes when certified to by him and included in the record shall establish the occurrence and existence of all testimony. . . . ." Even so, it is still subject to correction to make it "speak the truth."

**21.** It was last referred to by this Court in *Whitehead v. State,* 450 S.W.2d 72, 74 (Tex.Cr.

App.1968) in connection with a contention not actually decided by the Court; cf. with 450 S.W.2d at 76: ". . . . counsel for appellant waived any complaint as to whether the testimony given *at the prior trial* was correctly transcribed," etc. when he agreed in open court that it had been.

**22.** "The statute provides that the magistrate shall in every case attest by his certificate and signature to the execution and signing of the statement. This statute is plain and unambiguous and was evidently passed by the Legislature for a definite purpose, and we think the trial court was without warrant in law in ignoring the plain terms of the statute," 273 S.W. at 859. Cited in support are *Kerry v. State,* supra, and *Kirby v. State,* 23 Tex.App. 13, 5 S.W. 165, 169 (1887), the latter being an example of sufficient authentication.

ward and often inconvenient procedure that contributed to deficient records of examining trials and a recognition that there are better and surer means in this modern work of machines, recording equipment and computers of taking and reproducing testimony that is *then* authenticated. See Special Commentary of Presiding Judge Onion following Article 16.09.[23] Therefore, we hold that a purported statement of facts containing testimony given by one or more witnesses presented by the State at an examining trial may not be considered as reproduced testimony in determining the confrontation issue unless it has been authenticated in the manner prescribed by Article 16.09, without a convincing showing of some extraordinary circumstance that pre-

vented full authentication by the magistrate and counsel for the State and for the accused.[24] None is shown here; to the contrary the attempt was never made.

Accordingly, grounds one and two are sustained,[25] the judgment of conviction is reversed and the cause is remanded.

---

**23.** "A statement of facts from the examining trial *approved* by parties and court is now authorized as well as the old method of preserving such testimony. Modern day court reporting dictated the necessity for this amendment. \* \* \* "

**24.** To the extent it conflicts with the holding in this case, *Serna v. State*, supra, is not regarded as authoritative.

**25.** In the event of a new trial, we see no barrier to having the statement of facts properly authenticated and approved and thereby show sufficient indicia of its reliability by revealing that an adequate opportunity for cross-examination *was in fact provided*, if it does.