NUMBER 13-99-119-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


MATIAS MORIN, III
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 332nd District Court


of Hidalgo County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Yañez

Opinion by Justice Dorsey



 This is an appeal of Matias Morin, III's second conviction for the
murder of Javier Cantu. The jury had previously convicted him of the
murder and assessed his punishment at sixty years in prison. We
reversed the conviction due to improper admission of hearsay and
remanded the cause for a new trial. Morin v. State, 960 S.W.2d 132
(Tex. App.--Corpus Christi 1997, no pet.). On retrial the jury convicted
him of the murder and assessed his punishment at sixty-two years in
prison and a $10,000 fine. At sentencing the trial court reduced the
punishment to sixty years in prison. By three issues appellant
complains that the trial court erred in admitting evidence from the first
trial, erred in denying his motion for new trial, and he challenges the
factual sufficiency of the evidence. The State brings one cross-point. 
We reform the judgment, and as reformed, we affirm.

I. Factual Background


 The State's chief witness, Javier Andres "Andy" Cespedes, was
an accomplice in the crime. He testified that in August, 1993, he was
with appellant, Marc Morin, and Javier Cantu. Marc gave some cocaine
to Cantu and asked him to sell it. Cantu left with the cocaine but later
returned it because he could not sell it. Appellant then took the cocaine
to Houston and tried to sell it there. However the buyers threatened to
kill him when they discovered that the cocaine was "cut up," meaning
that it was not strong enough. Afterwards appellant blamed Cantu for
nearly getting him killed and said that Cantu "had to go down."

 On August 26, 1993, appellant and Andy went to a store where
appellant bought a box of shotgun shells. After buying the shells they
drove to Andy's house and loaded two shotguns and a 9 millimeter
gun. Andy kept the guns in his bedroom. They wrapped towels around
the guns and put the guns in the back of the van which appellant was
driving. After picking up Marc the trio decided that appellant would call
Cantu over the telephone and ask him to go to a location near a canal
in the Edinburg, Texas, area. Appellant would take him to the canal
where Marc and Andy would be waiting in the van. They decided that
each person would shoot Cantu one time at the canal. After agreeing
on the plan they returned to appellant's house. Appellant called Cantu
and then told Marc and Andy that Cantu was "on his way" and "to take
off to the canal" and wait there. When appellant and Cantu arrived at
the canal Andy aimed a shotgun at Cantu's head. Andy testified that
"Mat [appellant] is looking at me, so he takes two steps back and then
he looks back at me and nods his head. That's when I pulled the trigger
and he [Cantu] falls down." Andy shot Cantu three more times with the
shotgun and six times with the 9 millimeter. Afterwards appellant,
Marc, and Andy drove to the home of Isaac Fuentes. Appellant and
Isaac took the two guns used in the murder out of the van and then
washed the van.

 Eulogia Cantu testified that on August 26, 1993, she and her son,
Javier Cantu, were at home. She saw him using the telephone. After
hanging up he told her that he was going to meet appellant. He left the
house about 7:20 p.m.

 Jose Cespedes, Andy's brother, testified that a couple of days
before the murder he saw what looked like a machine gun underneath
the bed in the bedroom where he and Andy slept. Around noon on the
day of the murder Jose was home when Andy and appellant came to
the house and went into the bedroom where the machine gun was
located. They stayed in the bedroom for twenty minutes. When they
came out Andy was carrying the machine gun which was wrapped in
a towel. Jose saw them get into a van and leave.

 Appellant testified that he had gone to Houston prior to Cantu's
murder, but he denied that he had tried to sell any cocaine there. He
testified that on the day of the murder he and Cantu went to the canal
because Cantu wanted to talk to Marc. Appellant and Cantu arrived at
the canal about 7:30 p.m. They got out of Cantu's car and walked to
the van. While appellant stood near the van he heard an "explosion." 
He panicked and got into the van. He heard some more explosions or
shots and then Andy threw a shotgun inside the van. He then saw
Andy take a machine gun out of the van. He tried to take the gun away
from Andy, but Andy cocked it in his face. Appellant got into the van
and closed the door. He heard another shot and then Andy got into the
van. After the shooting Marc and Andy dropped off appellant at Isaac
Fuentes' house. Appellant's testimony was that he did not nod his
head at Andy before Andy had shot Cantu. He denied saying that
Cantu had to go down, and he denied having anything to do with the
murder.

 Isaac Fuentes testified that he went with appellant to Houston. He
stated that he was with appellant during the entire trip and that
appellant did not try to sell any cocaine there.

 Eli Armenta, Andy's neighbor, testified that on the day of the
murder no one was at Andy's home until Andy's mother arrived about
5:00 p.m. He never saw the Morin family van at Andy's home that day.

II. Sufficiency of the Evidence



 By his first issue appellant challenges the factual sufficiency of the
evidence to support his conviction.

A. Accomplice Testimony


 Under article 38.14 of the Texas Code of Criminal Procedure a
conviction cannot stand on accomplice testimony unless it is
corroborated by other evidence tending to connect the accused with the
offense; the evidence is insufficient if it merely proves the commission
of the offense. Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App.
1999). It is not necessary that the corroborating evidence directly
connect the accused to the crime or that it be sufficient by itself to
establish guilt; it need only tend to connect the defendant to the
offense. Id. If the combined weight of the non-accomplice evidence
tends to connect the defendant to the offense the requirement of article
38.14 has been fulfilled. Id.

 In the instant case the evidence showed that shortly before he
died Cantu told his mother that he was going to see appellant. 
Appellant testified that he was at the murder scene with his family's
van. Further on the day of the murder Jose Cespedes saw appellant
and Andy carrying a machine gun wrapped in a towel out of the house
and then leave in a van with appellant driving. We conclude that the
combined weight of the non-accomplice evidence tends to connect
appellant to the murder and provides sufficient corroboration. See
Morin, 960 S.W.2d at 137.

B. Factual Sufficiency


 In the instant case the application paragraph provided that the jury
could convict appellant of murder if they found beyond a reasonable
doubt that Javier Andres Cespedes intentionally or knowingly caused
Cantu's death by shooting him with a deadly weapon, to-wit; a firearm,
and that appellant "knew of the intent, if any, of said JAVIER ANDRES
CESPEDES to shoot and kill the said JAVIER CANTU and the Defendant
acted with intent to promote or assist the commission of the offense by
JAVIER ANDRES CESPEDES to commit the offense of causing the death
of JAVIER CANTU, . . . ."

 Upon applying the factual sufficiency standard set forth in Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996) to the case before us,
we conclude that a rational jury could have found that Andy
intentionally killed Cantu with a deadly weapon. We also conclude that
a rational jury could find that appellant knew of Andy's intent to kill
Cantu, because appellant participated in the planning of Cantu's
murder. Further when Andy aimed the shotgun at Cantu, appellant
stepped back and nodded his head. Andy then fired at Cantu. 
Appellant acted with intent to promote or assist in the commission of
the offense, because he bought the shotgun shells, helped Andy load
the guns, helped Andy load the guns into the van, and asked Cantu to
come to the canal where he was killed. We hold that the verdict is not
so contrary to the overwhelming weight of the evidence that it is clearly
wrong and unjust. We overrule the first issue.

II. Prior Testimony


 By his second issue appellant contends that the trial court erred
when it allowed the State to introduce into evidence Dr. Ruben Santos'
autopsy report, along with his testimony from the Appellant's first trial. 
Dr. Santos, who performed Cantu's autopsy, testified at the earlier trial,
but had died prior to Appellant's re-trial. At the second trial the State
sought to introduce his testimony from the earlier trial by reading it
before the jury. Appellant objected on the basis that this would deny
him the right to confrontation. The trial court overruled the objection,
and the State read his testimony to the jury.

 Dr. Santos testified on direct examination that Cantu was shot ten
times. He had six distant-type gunshot wounds to the right side of the
face. He received one shotgun wound to the front of the right ear. Dr.
Santos said that although he was not a ballistics expert this wound
was made from a range of between three to five feet. Cantu had three
other shotgun wounds. He said that these wounds "were of a close
range type" because he found wads in each of the perforations. He did
not know the order in which the shots were fired, nor which were fired
first.

 On cross-examination counsel questioned him about the shotgun
wound to Cantu's head. His testimony was that generally speaking this
wound was inflicted at a distance of three to five feet. Counsel also
questioned him about the trajectory of the gunshot wounds to Cantu's
face. Dr. Santos said that they were fired from Cantu's right side.

 Appellant argues that Dr. Santos' prior testimony was neither
offered nor developed on cross-examination concerning (1) the distance
from which each shot was fired, and (2) the sequence of the shots. 
Appellant argues, therefore, that he was denied the right of
confrontation on these issues and the testimony of Dr. Santos should
have been excluded. We disagree.

 Rule 804(b)(1) of the Texas Rules of Evidence states that the
following are not excluded if the declarant is unavailable as a witness: 
"(1) In criminal cases, testimony given as a witness at another hearing
of the same or a different proceeding, if the party against whom the
testimony is now offered, had an opportunity and similar motive to
develop the testimony by direct, cross, or redirect examination. . . ." 
Tex. R. Evid. 804(b)(1).

 This rule does not require that in order for prior testimony to be
admitted as an exception to the hearsay rule the opponent of the
evidence have had an identical motive to challenge the testimony at the
prior proceeding as he now has at trial; rather, it requires only that he
have had a "similar" motive. Coffin v. State, 885 S.W.2d 140, 147 (Tex.
Crim. App. 1994). Neither the form of the proceeding, the theory of the
case, nor the nature of the relief sought need be the same. Id. Only the
particular issue about which the testimony was first offered must be
substantially similar to the issue upon which offered in the current
action. Id. As with opportunity, similar motive vel non must be
determined on a case-by-case basis, according to the particular facts
and circumstances. Id. Cf. Russell v. State, 604 S.W.2d 914 (Tex.
Crim. App. 1980) (for purposes of confrontation guarantee,
determination whether accused had opportunity to cross-examine
witness at prior proceeding is a fact-bound inquiry).

 In the instant case the State offered Dr. Santos' prior testimony
and autopsy report to show the cause of death. This evidence was
offered at the second trial for the same reason, which meets the
requirement of Rule 804(b)(1). The issues which appellant says were
not developed--the distance from which each shot was fired and the
sequence of the shots--were developed on direct and cross-examination
at the first trial. Appellant had an opportunity and similar motive to
develop the testimony at his first trial. We hold that appellant was not
denied his right to confrontation on these issues and that the trial court
did not err by admitting the testimony and autopsy report. See Tex. R.
Evid. 804(b)(1); Coffin, 885 S.W.2d at 147. We overrule the second
issue.

III. Motion For New Trial


 By his third issue appellant asserts that the trial court erred in
denying his motion for new trial based upon jury misconduct. 
Appellant filed a motion for new trial on December 22, 1998. The
hearing was set for February 26, 1999, at which time the State argued
that the motion had been overruled by operation of law on February 16,
1999. After hearing argument from both sides the trial court found that
it did not have jurisdiction to hear the motion.

 When a motion for new trial is presented to the trial court the
party presenting it has the burden to see that the hearing thereon is set
for a date within the trial court's jurisdiction. Crowell v. State, 949
S.W.2d 37, 38 (Tex. App.--San Antonio 1997, no pet.). Rule 21.8(a) of
the Texas Rules of Appellate Procedure provides that a trial court must
rule upon a motion for new trial within seventy-five days after imposing
or suspending sentence in open court. Rule 21.8(c) says that a motion
not timely ruled on by written order will be deemed denied when the
period prescribed in Rule 21.8(a) expires. In the instant case the court
imposed sentence on November 30, 1998. Thus the motion was
overruled by operation of law on February 16, 1999.(1) Because the court
had not ruled on the motion by February 16, 1999 the motion is
deemed denied. Tex. R. App. P. 21.8(c). We overrule the third issue.

IV. Punishment


 By one cross-point the State asserts that the trial court erred in
reducing the punishment from sixty-two years in prison and a $10,000
fine to a sixty-year sentence with no fine. In the first trial the jury
assessed punishment at sixty years in prison. At the second trial the
jury assessed punishment at sixty-two years in prison and a $10,000
fine. After the jury had assessed punishment in the second trial the trial
court held a hearing to pronounce sentence. At this hearing defense
counsel requested that the court reduce the punishment to that
assessed by the jury in the first trial. Counsel testified to the court that
after the second trial had concluded, and the court had informed the
jurors that counsel for both sides wanted to speak to them, he had
talked to the foreperson of the jury, who stated that "they had taken
into consideration at some point the previous 60-year sentence that had
been imposed" against appellant in the first trial. Counsel stated that
this information could only have come from outside the trial because no
evidence was presented at trial concerning the sixty-year sentence.

 The State's attorney then told the court that his understanding of
what had happened was that there were "eight people who had
punishment range of between 75 and life and that it was a compromise
down as far as the 62 years but, in fact, they hadn't considered that in
assessing the punishment that they did in this particular case. . . ." 
After hearing argument the court sentenced appellant to sixty years in
prison.

 In Chaffin v. Stynchcombe, 412 U.S. 17 (1973) the Court
considered whether the Due Process Clause of the Fourteenth
Amendment barred the jury from rendering higher sentences on retrials
following reversals of prior convictions. The Court stated that "The
rendition of a higher sentence by a jury upon retrial does not violate the
Double Jeopardy Clause. Nor does such a sentence offend the Due
Process Clause so long as the jury is not informed of the prior sentence
and the second sentence is not otherwise shown to be a product of
vindictiveness." Id., at 36. (emphasis added). Both before and after
Chaffin the court of criminal appeals has reached the same result. See
Jackson v. State, 766 S.W.2d 504, 507 (Tex. Crim. App. 1985) (quoting
the Chaffin rule), and cases cited therein.

 In the instant case even if the jury was informed about the sixty-year sentence the record does not show that the second sentence was
a product of the jury's vindictiveness. There is no presumption of
vindictiveness when, as in this case, a jury assesses the subsequent
punishment. Wiltz v. State, 863 S.W.2d 463, 466 (Tex. Crim. App.
1993) (citing Chaffin).

 Moreover, courts have no power to change a jury's verdict unless
it is with the jury's consent and before they have dispersed. Ramirez v.
State, 587 S.W.2d 144, 145 (Tex. Crim. App. 1979); Ex parte McIver,
586 S.W.2d 851, 854 (Tex. Crim. App. 1979); Beasley v. State, 718
S.W.2d 304, 305 (Tex. App.--Amarillo, 1985, no pet.). The record does
not show that the jury had consented to the trial court's reduction of
the sentence. Thus the trial court had no authority to alter the verdict. 
We sustain the cross-point.

 We reform the judgment to show a sentence of sixty-two years in
the Texas Department of Criminal Justice, Institutional Division and a
$10,000 fine. As reformed, the judgment is affirmed.


 ______________________________

 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 17th day of August, 2000.

1. The seventy-fifth day was February 13, 1999, which was a
Saturday. Monday, February 15, 1999, was the President's Day
holiday.