**AFFIRM; and Opinion Filed December 11, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01225-CR

### RICARDO ONTIVEROS RODRIGUEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82359-2013**

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice Fillmore

A jury convicted Ricardo Ontiveros Rodriguez of indecency with a child by contact. Rodriguez pleaded true to the enhancement paragraph in the indictment, and the jury assessed punishment of six and one-half years' imprisonment. In four points of error, Rodriguez asserts the magistrate erred by finding at the examining trial that probable cause existed, the evidence is insufficient to support the verdict, the jury improperly drew conclusions based on circumstantial evidence, and the trial court erred by admitting evidence of extraneous acts of Rodriguez relating to the complainant, E.R. We affirm the trial court's judgment.

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned.

## Background

Rodriguez is E.R.'s uncle. After E.R.'s parents separated in 2002, E.R.'s mother became romantically involved with Rodriguez. Rodriguez began living with E.R. and her mother when E.R. was in the second grade. E.R. testified that, although she could not recall the exact timing or sequence of the events, two things happened with Rodriguez before she was in fifth grade that made her uncomfortable. The first incident occurred when Rodriguez came into E.R.'s room to tell her goodnight. E.R. was wearing only a big T-shirt as pajamas and "the blanket was just kind of covering [her] butt." Rodriguez thought E.R. was asleep and lifted the blanket "to look." E.R. testified he could see her "butt" when he lifted the covers. E.R. turned around "really quick." Rodriguez then smiled and kissed her goodnight. According to E.R. this incident "was different" from the other times Rodriguez told her goodnight. She did not tell anybody about the incident because she was scared.

On another occasion, E.R. was in her room drying off after a shower. She thought her mother was mowing the lawn and Rodriguez was sleeping and did not shut the door to her room. She saw Rodriguez standing in her doorway. Rodriguez could see the "back" of E.R., and she quickly covered herself with her towel. E.R. testified that Rodriguez said, "I want to just stand here, but I can't." Rodriguez then closed the door to E.R.'s room. According to E.R., Rodriguez later told her she had a "nice body" and a "nice butt."

E.R. testified the incident happened on a Friday, and she thought about it throughout the weekend. On Sunday, she was crying at church and was taken to the children's minister's office. E.R. was not certain she told the minister the entire story, but knows she said that Rodriguez "saw" her. Robbie Sutton, the children's minster at the church E.R. attended, confirmed she met with E.R. in May 2007. E.R. was "upset, tearful, and a little bit afraid." E.R. told Sutton that, after taking a shower, she went into her room, leaving the door to the room open, and Rodriguez

saw her naked. Rodriguez then closed the door. Later, Rodriguez told E.R. that she was beautiful. Sutton did not believe this comment was appropriate under the circumstances. Sutton agreed the incident was maybe "just one of those things that happens in families from time to time" and that there was no indication Rodriguez deliberately caused the incident. However, based on E.R. telling her that Rodriguez also put his hands on E.R.'s bottom when he hugged her, Sutton would not agree Rodriguez "tried to put an end to it."

After talking to E.R., Sutton spoke to E.R.'s mother and grandparents. Although Sutton is required to report suspected abuse to "CPS," she did not believe there was anything E.R. told her that required her to contact CPS. According to E.R., her grandparents and mother later discussed the incident with Rodriguez. Rodriguez denied he engaged in inappropriate conduct and indicated that E.R. misunderstood his actions. E.R. felt the incident "kind of went under the rug," and nothing changed.

Rodriguez worked a night shift and slept during the day. According to E.R., she would get into her mother's bed with Rodriguez during the day and they "cuddled and stuff." One day, when she was in the fifth grade, Rodriguez put his hand inside her pajama pants and onto her vagina. E.R. woke up and moved Rodriguez's hand. Rodriguez "put it back," and E.R. got up and went to her room. E.R. did not tell anyone about the incident at the time because she was scared of Rodriguez's reaction and of her mother getting hurt. She also did not know if there would be the same result as when she told Sutton about Rodriguez looking at her after she got out of the shower.

E.R.'s mother and Rodriguez separated in August 2008. In April 2012, when she was fifteen years old, E.R. was demonstrating signs of depression and having conflict with her mother. E.R.'s grandparents arranged for her to see Dr. Christina Sevadjian, a therapist. At a

–3–

session on July 26, 2012, E.R. disclosed Rodriguez had made sexual comments to her and touched her vagina inside her pajama pants. Sevadjian reported the outcry to CPS.

Rodriguez denied that he touched E.R. and testified she was lying. As to the incident following E.R.'s shower, Rodriguez testified E.R.'s mother called him and told him E.R. was getting ready to go see her grandparents. Rodriguez bought a six-pack of beer on his way home from work. When he opened the front door to the house he heard the water running. He went into the garage and drank three beers while he waited for E.R. to finish her shower.

Rodriguez opened the front door and heard the water had stopped running. He closed the garage and went inside the house. He saw E.R. in the middle of her room, drying her hair. Rodriguez saw E.R.'s "butt" and back. E.R. saw him and covered herself. According to Rodriguez, on previous occasions, E.R. failed to close the door to her bedroom when she was not dressed, and he had told her to close the door. Because of those previous incidents, Rodriguez got angry when he saw E.R. had not shut the door to her room, slammed the door shut, and began yelling at E.R. Rodriguez denied he told E.R. she had nice body or a nice "butt," but admitted he told her, "nobody wants to see your pretty ass."

The next Sunday, at approximately 5:30 p.m., E.R.'s mother woke Rodriguez. E.R.'s mother was crying and saying, "tell me you didn't do it." E.R.'s mother said E.R. was scared that Rodriguez was mad at her and did not want to come home. Rodriguez and E.R.'s mother went to E.R.'s grandparents' house. Rodriguez told E.R. he was not mad, but she had to close the door when she was not dressed. According to Rodriguez, E.R. never left the door open again.

The jury found Rodriguez guilty of indecency with a child. Rodriguez pleaded true to the enhancement paragraph alleged in the indictment and, after hearing additional punishment evidence, the jury sentenced Rodriguez to six and one-half years' imprisonment.

## Examining Trial

In his first point of error, Rodriguez asserts the magistrate erred by finding at the examining trial that there was probable cause to proceed with the prosecution. Rodriguez specifically argues the only witness at the examining trial was Natalie Irwin, a detective with the McKinney Police Department, who testified about what she observed during E.R.'s forensic interview. Rodriguez contends Irwin's testimony was insufficient to establish probable cause, and the case should have been dismissed at that point.[2]

One of the traditional and statutory purposes of an examining trial is to determine whether there exists sufficient evidence of guilt to hold a suspect accused of criminal conduct. TEX. CODE CRIM. PROC. ANN. art. 16.17 (West 2015); *State ex rel. Holmes v. Salinas*, 784 S.W.2d 421, 424 (Tex. Crim. App. 1990) (orig. proceeding); *see also* TEX. CODE CRIM. PROC. ANN. art. 16.01 (West 2015) (during examining trial, magistrate "shall proceed to examine into the truth of the accusation made"). If the magistrate finds that probable cause does not exist to believe the defendant committed the crime for which he is charged, the magistrate discharges the defendant. TEX. CODE CRIM. PROC. ANN. art. 16.17. However, an accused discharged after an examining trial may be subsequently indicted for the same offense. *See Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim. App. [Panel Op.] 1982) (citing *Ex parte LeBlanc*, 577 S.W.2d 731, 733 (Tex. Crim. App. 1979)).

The examining trial was held on August 30, 2013. On October 3, 2013, the grand jury returned an indictment against Rodriguez. The return of an indictment by a properly constituted grand jury is conclusive on the issue of probable cause. *Perez v. State*, 590 S.W.2d 474, 478 (Tex. Crim. App. [Panel Op.] 1979) ("[T]he return of a true bill of indictment independently

---

[2] Rodriguez could have sought review of this complaint by writ of habeas corpus challenging his continued detention following the examining trial. *See Russell v. State*, 604 S.W.2d 914, 921 n.12 (Tex. Crim. App. [Panel Op.] 1980); *see also Ex parte Robinson*, 641 S.W.2d 552, 553 (Tex. Crim. App. [Panel Op]. 1982) (writ of habeas corpus is remedy to be used when any person is restrained in his liberty).

satisfies the principal purpose and justification of the examining trial to show that there is probable cause to believe the accused committed the offense charged."), *superseded by rule on other grounds as recognized by Burks v. State*, 876 S.W.2d 877, 904 (Tex. Crim. App. 1994); *see also Ex parte United States*, 287 U.S. 241, 250 (1932) (return of true bill of indictment "conclusively determines the existence of probable cause for the purpose of holding the accused to answer"). Therefore, the question of whether the evidence at the examining trial was sufficient to establish probable cause to detain Rodriguez was rendered moot after the grand jury returned the indictment. *See Russell v. State*, 604 S.W.2d 914, 921 n.12 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Branch*, 553 S.W.2d 380, 381 (Tex. Crim. App. 1977). We resolve Rodriguez's first point of error against him.

### Sufficiency of the Evidence

In his second and third points of error, Rodriguez argues the evidence is insufficient to support the verdict and the jury impermissibly drew conclusions based on circumstantial evidence. We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). As the fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App.

2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the jury's determinations of credibility, and may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury"). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The standard of review is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Each fact need not point directly and independently to the guilt of the accused, as long as the cumulative force of all the evidence, when coupled with reasonable inferences to be drawn from that evidence, is sufficient to support the conviction. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is as probative as direct evidence and, alone, can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903.

A person commits the offense of indecency with a child by engaging in sexual contact with a child younger than seventeen years old. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). "Sexual contact" includes touching by a person, including touching through clothing, of the genitals of a child with the intent to arouse or gratify the sexual desire of any person.

*Id.* § 21.11(c)(1). The testimony of a child victim alone is sufficient to support a conviction for indecency with a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Proctor v. State*, 356 S.W.3d 681, 685 (Tex. App.—Eastland 2011, pet. ref'd); *see also IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd) (child victim's testimony sufficient to support conviction for aggravated sexual assault).

Whether the person possessed the requisite intent to commit an offense is most often proven through circumstantial evidence surrounding the crime. *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). The jury may infer the requisite intent from the acts, words, and conduct of the accused. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Scholars*, 312 S.W.3d at 703. In the context of indecency with a child, the jury can infer the intent to arouse or gratify from conduct alone. *Scott*, 202 S.W.3d at 408; *see also McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). "No oral expression of intent or visible evidence of sexual arousal is necessary." *Scott*, 202 S.W.3d at 408; *see also Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

E.R. testified that, when she was in fifth grade, she was asleep in her mother and Rodriguez's bed. E.R. woke up when Rodriguez put his hand inside her pajama pants and touched her vagina. After E.R. moved Rodriguez's hand, he placed it on her vagina again. E.R.'s testimony was sufficient to support the jury's finding that Rodriguez touched her vagina. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Proctor*, 356 S.W.3d at 685; *see also IslasMartinez*, 452 S.W.3d at 880. Further, based on Rodriguez's conduct in touching E.R., his conduct and remarks on prior occasions, and the surrounding circumstances, a rational factfinder could have concluded that Rodriguez had the specific intent to arouse or gratify his own sexual desire at the

time he touched E.R.'s vagina. *See McKenzie*, 617 S.W.2d at 216; *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd).

Although Rodriguez argues that E.R. was not credible, it was the role of the jury to evaluate the credibility of the witnesses, and we may not substitute our judgment for that of the jury. *Jackson*, 443 U.S. at 319; *Thornton*, 425 S.W.3d at 303. Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, could have found beyond a reasonable doubt that Rodriguez committed the offense of indecency with a child, and that in reaching its verdict, the jury did not impermissibly speculate based on circumstantial evidence. We resolve Rodriguez's second and third points of error against him.

### Extraneous Acts

In his fourth point of error, Rodriguez contends the trial court erred by allowing testimony about two extraneous acts: (1) his lifting the covers to look at E.R.; and (2) his looking at E.R. after she got out of the shower and later making comments about her body. Rodriguez specifically argues evidence of these incidents was more prejudicial than probative and should have been excluded under rule of evidence 403.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (admissibility of extraneous offense). We will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *De La Paz*, 279 S.W.3d at 343–44; *see also Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

Rodriguez filed a motion in limine requesting, in relevant part, that the trial court instruct "the State, its agents, employees and witnesses not to mention, allude to or refer to, in any

manner" extraneous offenses, including other bad acts, of Rodriguez. The parties agreed none of the items raised in Rodriguez's motion in limine would be discussed during voir dire. After a jury was selected, the trial court granted Rodriguez's motion for mistrial based on comments made by a witness that were likely overheard by at least some of the jurors.

Rodriguez raised his motion in limine again prior to the voir dire of the second panel. The prosecutor listed a number of extraneous acts she intended to offer at trial, including the incidents complained about on appeal. The prosecutor argued that, because the incidents were between Rodriguez and E.R., they were "not necessarily extraneous" and were admissible. The trial court indicated it would consider "those things" once a jury was selected.

The following day, before the jurors were sworn, the trial court held a hearing on, among other things the admissibility of the two incidents involving Rodriguez looking at E.R.'s naked body. The prosecutor argued the incidents were admissible under article 38.37 of the code of criminal procedure because they related to the relationship between E.R. and Rodriguez and to Rodriguez's state of mind at the time of the offense. Rodriguez's counsel stated:

> [W]e object because it's prejudicial. I understand the other argument. I'm not going to – I'm not going to argue to the Court something that I'm not in good faith on. It is certainly a prejudicial event. I know the cases that deal with things like grooming, which is what everything is called before the act ever happens these days, but I understand that concept of its admissibility.
>
> It is the same complainant, it's not somebody different. And other than its prejudicial effect, I don't think we have any other argument to offer the Court. We object to it. We don't want to be – we don't want to be understood to acquiesce in its submission, we object to it. Because it's a big deal and it hurts our case tremendously.

The trial court stated it had read article 38.37 of the code of criminal procedure and would allow testimony about the two incidents.

In a prosecution for indecency with a child, section 1 of article 38.37 authorizes the admission of evidence that the defendant committed extraneous sexual offenses against the

victim to be admitted for its bearing on relevant matters, including "the state of mind of the defendant and the child" and "the previous and subsequent relationship between the defendant and the child." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1 (West Supp. 2014). "Evidence that is relevant under article 38.37 is 'nevertheless subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice[.]'" *Martines v. State*, 371 S.W.3d 232, 246 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd)). When evidence of a defendant's extraneous conduct is relevant under article 38.37, the trial court is required, on proper objection or request, to conduct a rule of evidence 403 balancing test. *Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.); *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd). Absent an explicit refusal to conduct the balancing test, we presume the trial court conducted the test when it overruled the objection. *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997) (appellate courts presume trial court engaged in required balancing test once rule 403 is invoked, and trial court's failure to conduct balancing test on record does not imply otherwise); *Sanders*, 255 S.W.3d at 760 (rule 403 does not require the balancing analysis be performed on the record).

In considering a rule 403 challenge, courts must balance (1) the inherent probative force of the evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already

admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *see also Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012), *cert. denied*, 134 S.Ct. 823 (2013). We should reverse the trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 392 (quoting *United States v. Maggitt*, 784 F.2d 590, 597 (5th Cir. 1986)). In addition, because rule 403 permits the exclusion of admittedly probative evidence, "it is a remedy that should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

The first two *Gigliobianco* factors involve the probative value of the evidence—how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation coupled with the proponent's need for that item of evidence. *Gigliobianco*, 210 S.W.3d at 641. In this case, the inherent probative force of the extraneous act evidence was substantial. The evidence Rodriguez looked at E.R. while she was naked and, on one occasion, made comments about E.R.'s body was admissible to show Rodriguez's state of mind at the time of the offense as well as the nature of his prior relationship with E.R. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37; *McCulloch v. State*, 39 S.W.3d 678, 681 (Tex. App.—Beaumont 2001, pet. ref'd).

Further, the State's need for the evidence was substantial. When, as here, a defendant denies the criminal act occurred and contends the complainant fabricated her account, evidence of similar extraneous acts may be necessary to corroborate the complainant's account and rebut the defensive theory. *See Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002);

–12–

*Montgomery*, 810 S.W.3d at 397.[3]   The only direct evidence that Rodriguez touched E.R.'s vagina came from E.R., whose credibility was attacked by Rodriguez.  The only other evidence that Rodriguez touched E.R.'s vagina came through Sevadjian's testimony about E.R.'s outcry. The jury's determination of whether the offense occurred was based solely on its evaluation of the credibility of E.R. and Rodriguez.  Evidence of Rodriguez's prior conduct, along with E.R.'s complaint about the conduct to Sutton, would assist the jury in determining E.R. was credible when she testified Rodriguez touched her vagina.  Therefore, these factors weigh in favor of admission of the evidence.

As to the third factor, there is nothing in the record to indicate admission of the evidence would be so inherently inflammatory that it would tend to elicit an emotional response and impress a jury in some "irrational and indelible way," *Wheeler* 67 S.W.3d at 889, or "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged" of indecency with a child. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).  Rather, the evidence that Rodriguez looked at E.R.'s naked body and made comments about it is not as egregious as the alleged conduct that Rodriguez touched E.R.'s vagina. *See Jones v. State*, 119 S.W.3d 412, 422–23 (Tex. App.—Fort Worth 2003, no pet.) (prejudicial effect did not substantially outweigh probative value of extraneous acts admitted under article 38.37 when "all of the extraneous acts involving G.V. were less heinous than the evidence relating to the charged offense involving Jones's reaching into G.V.'s pants and touching her").  As such, this factor weighs in favor of admission of the evidence.

The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the

---

[3] *See also Victorian v. State*, No. 01-13-01004-CR, 2015 WL 3915966, at *7 (Tex. App.—Houston [1st Dist.] June 25, 2015, pet. ref'd) (mem. op., not designated for publication) ("When, as here, a defendant denies that the criminal act occurred and contends that the complainant fabricated her account, evidence of similar extraneous acts may be necessary to corroborate the complainant's account and rebut the defensive theory.")

evidence.  *See Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (this factor looks to the "time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense") (citing *Montgomery*, 810 S.W.2d at 389–90).  We have already concluded the evidence was highly probative of Rodriguez's state of mind and his relationship with E.R.  Accordingly, there is a low probability the evidence would confuse or distract the jury from the main issues in the case.  Further, although the development of the evidence of the extraneous acts took some time and more than one witness, it was not so overwhelming as to distract the jury from the charged conduct.  These factors weigh in favor of admission of the evidence.

Finally, the fifth factor concerns a "tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds.  For example, 'scientific' evidence that might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641 (internal citation omitted).  The evidence at issue here was not prone to this tendency, as it pertained to matters that could easily be understood by a jury.  Therefore, this factor weighs in favor of admission of the evidence.

The evidence of extraneous acts of Rodriguez relating to E.R. was admissible under article 38.37 of the code of criminal procedure to show Rodriguez's state of mind as well as the relationship between Rodriguez and E.R.  Further, the rule 403 factors weigh in favor of the admission of the extraneous conduct.  Although Rodriguez complained at trial, and complains on appeal, that the evidence was prejudicial, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).  Because we cannot conclude the trial court abused its discretion by admitting the evidence of Rodriguez's extraneous acts involving E.R., we resolve Rodriguez's fourth point of error against him.

–14–

We affirm the trial court's judgment.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

141225F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RICARDO ONTIVEROS RODRIGUEZ,
Appellant

No. 05-14-01225-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas,
Trial Court Cause No. 401-82359-2013.
Opinion delivered by Justice Fillmore,
Justices Stoddart and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of December, 2015.